UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

SAKHONE HARRIS, Individually and on behalf
of a class of others similarly situated,

       Plaintiff,

    v.                                 Case No.: 2:18-cv-00464-PP

VERISMA SYSTEMS, INC. and
FROEDTERT HEALTH, INC.,

       Defendants.

# DEFENDANT FROEDTERT HEALTH, INC.'S
# MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
# TO DISMISS CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   SUMMARY OF LEGAL BACKGROUND AND FACTUAL ALLEGATIONS ............ 3

      A.    Legal Background ...................................................................... 3

            1.    Wisconsin law regarding the confidentiality and release of patient
                  health care records. .................................................................. 3

            2.    The Wisconsin Court of Appeals rules that a patient's attorneys are
                  not "person[s] authorized by the patient." ................................... 4

            3.    Fifteen months after the Wisconsin Court of Appeals' decision in
                  *Moya I*, the Wisconsin Supreme Court reverses and holds that
                  personal injury attorneys *are* "person[s] authorized by the patient." ......... 6

      B.    Plaintiff's Factual Allegations ............................................... 7

III.  ARGUMENT .......................................................................................... 9

      A.    The Complaint should be dismissed under Rule 12(b)(1) for lack of
            standing. .................................................................................. 9

            1.    Legal Standard. ...................................................................... 9

            2.    Plaintiff fails to allege any injury-in-fact that is traceable to
                  Froedtert. ............................................................................. 11

      B.    The Complaint should be dismissed under Rule 12(b)(6) for failure to state
            a claim. .................................................................................. 16

            1.    Legal Standard. .................................................................... 16

            2.    Plaintiff fails to plead that Froedtert is a "health care provider," so
                  Froedtert cannot be liable under the statute. ............................ 17

            3.    Wis. Stat. § 146.84 is not a strict liability statute, and Plaintiff has
                  failed to allege facts plausibly supporting Froedtert's scienter. .............. 18

                  a.    Plaintiff's knowing and willful statutory violation claim
                        should be dismissed because Plaintiff has failed to allege
                        facts sufficient to support her claim. ............................ 19

                  b.    Plaintiff's negligent statutory violation claim should be
                        dismissed because Plaintiff has failed to allege facts
                        sufficient to support her claim. .................................... 20

Case 2:18-cv-00464-LA   Filed 05/24/18   Page 2 of 32   Document 18

4.  Plaintiff's unjust enrichment claim should be dismissed.......................... 20

    a.  Plaintiff's unjust enrichment claim should be dismissed because Plaintiff has failed to allege facts sufficient to support her claim............................................................... 20

    b.  Plaintiff's unjust enrichment claim is barred by the voluntary payment doctrine. ......................................................... 22

    c.  Because Plaintiff does not plead her unjust enrichment claim in the alternative, it must be dismissed because it is preempted by her statutory claim.................................................. 23

C.  The alleged class period should be limited due to the statute of limitations. ....... 24

IV.  CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Alam v. Miller Brewing Co.*,
709 F.3d 662 (7th Cir. 2013) ....................................................................... 17, 20, 21

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009) ................................................................................. 9

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................. 16, 17, 20, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................. 16, 17, 20, 22

*Bertha v. Remy Int'l, Inc.*,
414 F.Supp. 2d 869 (E.D.Wis.2006) ...................................................................... 24

*Blitz v. Monsanto Co.*,
No. 17-CV-473-WMC, 2018 WL 1785499 (W.D. Wis. Apr. 13, 2018) ................... 22

*Boldt v. State*,
101 Wis. 2d 566, 305 N.W.2d 133 (1981) ............................................................. 25

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) .......................................................................... 20, 21

*Butcher v. Ameritech Corp.*,
2007 WI App 5, 298 Wis. 2d 468, 727 N.W.2d 546 .............................................. 22

*Carter v. HealthPort Technologies, LLC*,
822 F.3d 47 (2d Cir. 2016) ............................................................................. 13, 14

*Cornucopia Inst. v. U.S. Dep't of Agriculture*,
884 F.3d 795 (7th Cir. 2018) ................................................................................ 10

*Cruz v. All Saints Healthcare Sys., Inc.*,
2001 WI App 67, 242 Wis. 2d 432, 625 N.W.2d 344 ............................................ 15

*ERA Franchise Sys., LLC v. Hoppens Realty, Inc.*,
No. 12-CV-594-SLC, 2013 WL 3967869 (W.D. Wis. July 31, 2013) ..................... 17

*First Nat'l Exch. Bank v. Harvey*,
176 Wis. 64, 185 N.W. 215 (1922) ....................................................................... 23

*FW/PBS, Inc. v. Dallas*,
493 U.S. 215, 110 S.Ct. 596 (1991) ...................................................................... 11

*Groshek v. Time Warner Cable, Inc.*,
    865 F.3d 884 (7th Cir. 2017) ..................................................................... 9

*Hamilton v. O'Leary*,
    976 F.2d 341 (7th Cir. 1992) ..................................................................... 17

*Hannigan v. Sundby Pharmacy*,
    224 Wis. 2d 910, 593 N.W.2d 52 (Ct. App. 1999) ........................................ 18, 19

*Harley Marine Servs., Inc. v. Manitowoc Marine Grp.*, LLC,
    759 F. Supp. 2d 1059 (E.D. Wis. 2010)..................................................... 24

*Hollingsworth v. Perry*,
    570 U.S. 693, 133 S.Ct. 2652 (2013)......................................................... 16

*Kolupa v. Roselle Park Dist.*,
    438 F.3d 713 (7th Cir. 2006) ..................................................................... 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc*.
    134 S.Ct. 1377 (2014)............................................................................... 14

*Liparota v. United States*,
    471 U.S. 419, 105 S.Ct. 2084 (1985)......................................................... 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130 (1992)................................................ 10, 11, 16

*Major Mat Co. v. Monsanto Co.*,
    969 F.2d 579 (7th Cir. 1992) ..................................................................... 21

*McConkey v. Van Hollen*,
    2010 WI 57, 326 Wis. 2d 1, 783 N.W.2d 855 ........................................... 16

*McCracken v. Verisma Systems, Inc.*,
    No. 14-CV-6248T, 2015 WL 2374544 (W.D.N.Y. May 18, 2015) ............... 12, 13, 14

*Moya v. Aurora Healthcare, Inc.*,
    2017 WI 45, 375 Wis. 2d 38, 894 N.W.2d 405 ................................... 1, 6, 7, 8, 23

*Moya v. Aurora Healthcare, Inc.*,
    2016 WI App 5, 366 Wis. 2d 541, 874 N.W.2d 336 ..................................... 4, 5, 6

*Murray v. New Cingular Wireless Servs., Inc.*,
    523 F.3d 719 (7th Cir. 2008) ..................................................................... 19

*Non Typical Inc.v. Transglobal Logistics Grp. Inc.*,
    No. 10-C-1058, 2011 WL 1792927 (E.D. Wis. May 11, 2011) ..................... 24

*Pawlowski v. Am. Family Mut. Ins. Co.*,
  2009 WI 105, 322 Wis. 2d 21, 777 N.W.2d 67 ................................................................. 18

*Plumbers' Woodwork Co. v. Merchant's Credit & Adjustment Bureau*,
  199 Wis. 466, 226 N.W. 303 (1929) .............................................................................. 23

*Putnam v. Time Warner Cable of Se. Wisconsin, Ltd. P'ship*,
  2002 WI 108, 255 Wis. 447, 649 N.W.2d 626 ............................................................... 22

*Puttkammer v. Minth*,
  83 Wis. 2d 686, 266 N.W.2d 361 (1978) ....................................................................... 22

*Reynolds v. CB Sports Bar, Inc.*,
  623 F.3d 1143 (7th Cir. 2010) ....................................................................................... 16

*Safeco Ins. Co. v. Burr*,
  551 U.S. 47, 127 S.Ct. 2201 (2007) .............................................................................. 19

*Sands v. Menard*,
  2017 WI 110, 379 Wis. 2d 1, 904 N.W. 2d 789
  (*cert. filed* May 22, 2018, No. 17-1574) ............................................................... 20, 21

*Spiro v. Healthport Technologies, LLC*,
  73 F. Supp. 3d 259 (S.D.N.Y. 2014) ................................................................. 11, 12, 14, 15

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................... 10, 11, 16

*Stadler v. John Hancock Life Ins. Co.*,
  No. 13-CV-679-JPS, 2013 WL 5798555 (E.D. Wis. Oct. 28, 2013) .................................... 21

*State ex rel. Dicks v. Employee Tr. Funds Bd.*,
  202 Wis. 2d 703, 551 N.W.2d 845 (Ct. App. 1996) ......................................................... 5

*State ex rel. Healthport Technologies, LLC v. Stucky*,
  239 W.Va. 239, 800 S.E.2d 506 (2017) ..................................................................... 13, 14

*State v. Fettig*,
  172 Wis. 2d 428, 493 N.W.2d 254 (Ct. App. 1992) ......................................................... 19

*Steel Co. v. Citizens for Better Environment*,
  523 U.S. 83, 118 S.Ct 1003 (1998) ............................................................................... 10

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) ....................................................................................... 24

*Three T's Trucking v. Kost*,
  2007 WI App 158, 303 Wis. 2d 681, 736 N.W.2d 239 ..................................................... 15

*UWM Student Ass'n v. Lovell,*
  888 F.3d 854 (7th Cir. 2018) ................................................. 14

*Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.,*
  454 U.S. 464, 102 S. Ct. 752 (1982) ........................................ 10

*Vesely v. Armslist LLC,*
  762 F.3d 661 (7th Cir. 2014) ........................................... 17, 18

*Warth v. Seldin,*
  422 U.S. 490, 95 S.Ct. 2197 (1975) ......................................... 11

*Wausau Tile, Inc. v. Cty. Concrete Corp.,*
  226 Wis. 2d 235, 593 N.W.2d 445 (1999) ................................... 15

*Wells Fargo Bank, N.A. v. Alexander,*
  No. 11-CV-1622, 2013 WL 4104472 (Wis. Ct. App. Aug.15, 2013) ............ 15

**Statutes**

Wis. Stat. § 146.81 ............................................... 3, 4, 6, 17

Wis. Stat. § 146.82 ....................................................... 3

Wis. Stat. § 146.83 ................................................. *passim*

Wis. Stat. § 146.84 ................................................. *passim*

Wis. Stat. § 174.02 ..................................................... 185

Wis. Stat. § 752.41 ....................................................... 5

Wis. Stat. § 893.43 ...................................................... 25

Wis. Stat. § 893.93 ...................................................... 25

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................. 9

Fed. R. Civ. P. 12(b)(6) ................................................. 16

# I.     INTRODUCTION

Under Wisconsin law, a health care provider must provide copies of a patient's health care records "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees . . . ."  Wis. Stat. § 146.83(3f). In addition to copying charges, health care providers may charge a certification charge and a retrieval fee for the processing of health care records, except when the requester of the records is the "patient or a person authorized by the patient." Wis. Stat. § 146.83(3f)(b)4.-5. Health care providers may not release records to a third party in the first instance (except in limited circumstances) without the patient's HIPAA written authorization. For years, health care providers and their vendors had in good faith charged certification charges and retrieval fees to personal injury attorneys seeking health care records. In May 2017, however, the Wisconsin Supreme Court – reversing the Wisconsin Court of Appeals – held that a personal injury attorney authorized by his or her client via a HIPAA release form is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b) who is exempt from the certification charge and retrieval fee.  *Moya v. Aurora Healthcare, Inc.*, 2017 WI 45, 375 Wis. 2d 38, 894 N.W.2d 405 *[Moya II]*. The *Moya II* decision spawned a flurry of litigation, including this lawsuit.

In this case, Plaintiff Sakhone Harris ("Harris") alleges that Froedtert Health, Inc. ("Froedtert") and its vendor, Verisma Systems, Inc. ("Verisma") violated Wis. Stat. § 146.83 by charging her attorneys the certification charge for copies of her medical records, even though her attorneys presented her signed HIPAA release form. (Dkt. 1 ¶¶ 31-32.) Plaintiff further purports to represent a class of individuals who were charged allegedly improper retrieval and/or certification fees. (Dkt. 1 ¶ 26.)

There are numerous problems with Plaintiff's allegations that doom her claims as a matter of law. *First*, Plaintiff fails to allege that *she* suffered an injury-in-fact, let alone one

caused by Froedtert. To the contrary, Plaintiff alleges that her *attorneys* requested her medical records and paid the accompanying fees to Verisma. Although Plaintiff supposedly later "reimbursed" her attorneys for these costs, she does not allege that she had any obligation to do so, and a non-obligatory payment does not create Constitutional standing to bring a claim for an injury to oneself. Plaintiff does not allege that she, rather than her attorneys, suffered any injury-in-fact traceable to Froedtert. Plaintiff lacks standing to bring this lawsuit, and it should be dismissed.

*Second*, Plaintiff fails to state a claim under Wis. Stat. § 146.84(1), the statute that provides a private cause of action for violations related to patient health care records. The plain language of that statute makes clear that mere violation of the statute is not enough to create liability; a Plaintiff must prove that a defendant violated the statute "knowingly and willfully" or "negligently." Although Plaintiff's Complaint includes allegations containing these words, she pleads no facts supporting these conclusory allegations, as required to state a plausible claim for relief under federal law. Absent any facts plausibly supporting Froedtert's liability under the statute, Plaintiff's claims should be dismissed.

*Third*, Plaintiff's unjust enrichment claim fails as a matter of law because Plaintiff does not allege facts plausibly supporting her claim that Froedtert received any benefit, much less one resulting from Froedtert's inequitable conduct. Moreover, the voluntary payment doctrine bars Plaintiff's unjust enrichment claim because her attorneys paid the charges and apparently did not object to the imposition of the allegedly unauthorized fees before paying them. Finally, Plaintiff's unjust enrichment claim should be dismissed as a matter of law because it is an equitable remedy that is preempted by Wis. Stat. § 146.84, yet it is not plead in the alternative.

And, *fourth*, Plaintiff's class claims are partially-time barred because the alleged class period predates the applicable 6-year statute of limitations for both causes of action. Therefore, should any claims survive this motion, the court should limit the putative class' claims to conduct occurring after March 23, 2012.

## II.    SUMMARY OF LEGAL BACKGROUND AND FACTUAL ALLEGATIONS

### A.    <u>Legal Background</u>

#### 1.    **Wisconsin law regarding the confidentiality and release of patient health care records.**

Under Wisconsin law, "[a]ll patient health care records shall remain confidential." Wis. Stat. § 146.82(1).[1] Health care providers may only release patient health care records either "with the informed consent of the patient or of a person authorized by the patient," or in limited other circumstances enumerated by statute. *Id.* "Informed consent" is defined by statute to require the patient's written consent for the disclosure of health care records, consistent with the requirements of the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *See* Wis. Stat. § 146.81(2); 45 C.F.R. § 164.524.  "[I]f a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees," health care providers are required to provide requested records. Wis. Stat. § 146.83(3f).

Wisconsin law also dictates the maximum fees that health care providers can charge for compiling, preparing, and releasing medical records to persons who have the patient's informed consent.[2] Wis. Stat. § 146.83(3f)(b). The statute lists the maximum charges for paper copies, for microfiche or microfilm copies, and for X-rays, and also provides the following:

---

[1] All statutory references are to the 2015-2016 statutes, unless otherwise noted.

[2] Froedtert objects to Plaintiff's analogy to third-party copying costs to show that Wisconsin's statutory copying, retrieval, and certification fees are "substantial[]." (Dkt. 1, ¶¶ 10, 11.) The cost to copy a document at Staples is wholly inapposite to the cost of maintaining and providing copies of health care records. By statute, health care providers must maintain records confidentially under Wis. Stat. § 146.82,

4.      If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5.      If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

Wis. Stat. § 146.83(3f)(b)4.-5. "[P]erson authorized by the patient," is defined as follows:

the parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34 (4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient, any person authorized in writing by the patient or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05 (2), except as limited by the power of attorney for health care instrument. If no spouse or domestic partner survives a deceased patient, "person authorized by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895 (1) (d). A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of records, if no guardian has been appointed for the patient.

Wis. Stat. § 146.81(5). The statutes further specify that a "person authorized by the patient" includes public defenders appointed to represent indigent defendants if they have informed consent. Wis. Stat. § 146.83(1b) ("Notwithstanding s. 146.81(5), in this section a 'person authorized by the patient' includes an attorney appointed to represent the patient under [the public defender statute] if that attorney has written informed consent from the patient to view and obtain copies of the records.")

## 2.      The Wisconsin Court of Appeals rules that a patient's attorneys are not "person[s] authorized by the patient."

In early 2013, the Welcenbach Law Offices ("Welcenbach") filed a class action complaint on behalf of Carolyn Moya against Aurora Healthcare, Inc. ("Aurora") and its records vendor, Healthport Technologies, LLC ("Healthport"). *Moya v. Aurora Healthcare, Inc.*, 2016

---

evaluate potential requests, gather records in response to requests, and then produce the records along with a certification of their authenticity, tasks which are all reflected in the comprehensive statutory fee schedule determined by the Wisconsin legislature.

WI App 5, ¶¶ 3, 7, 366 Wis. 2d 541, 874 N.W.2d 336 [*Moya I*]. The complaint alleged that Welcenbach requested Moya's medical records from Aurora and Healthport, who then violated Wis. Stat. §146.83(3f) by charging Welcenbach the $20 retrieval fee and the $8 certification charge, despite the fact that Moya had authorized the law firm in writing to obtain these records. *Id.* ¶¶ 2-3.

Aurora and Healthport moved for summary judgment, arguing that personal injury attorneys with a HIPAA written authorization are not "person[s] authorized by the patient" for purposes of the retrieval fee and certification charge. *Id.* ¶ 4. The circuit court sided with Moya, but on an interlocutory appeal the court of appeals reversed. *Id.* ¶¶ 5, 16. The court of appeals explained:

> Our review of the relevant statutes establishes that attorneys are not delineated in the list of individuals set forth in the definition of "person authorized by the patient" in WIS. STAT. § 146.81(5), the context of the statutory scheme indicates that "authorized" means having the power to consent to the release of the patient's records, and the recent amendment to WIS. STAT. § 146.83 adding subsection (1b) [regarding public defenders] clearly shows attorneys do not fall under the definition of "person authorized by the patient." Accordingly, we conclude the circuit court misinterpreted the statute when it determined that Moya's signed HIPAA release made Moya's attorney a "person authorized by the patient" as that term is used in these statutes.

*Id.* ¶ 16. The court of appeals thus held that the defendants properly charged Moya's personal injury attorneys statutory retrieval and certification fees. The decision was published and had statewide precedential effect. Wis. Stat. § 752.41(2); *State ex rel. Dicks v. Employee Tr. Funds Bd.*, 202 Wis. 2d 703, 551 N.W.2d 845, 848 (Ct. App. 1996) ("When the court of appeals construes a statute in a published opinion, that opinion binds every agency and every court until it is reversed or modified.").

**3.** **Fifteen months after the Wisconsin Court of Appeals' decision in *Moya I*, the Wisconsin Supreme Court reverses and holds that personal injury attorneys *are* "person[s] authorized by the patient."**

*Moya I* remained the law until May 4, 2017, when the Wisconsin Supreme Court reversed the court of appeals' decision. *Moya II*, 894 N.W.2d 405. In *Moya II*, the Wisconsin Supreme Court ruled that "an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a 'person authorized by the patient' under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under these subdivisions." *Id.* ¶ 2.

Justice Annette Kingsland Ziegler dissented. Criticizing the majority opinion's broad interpretation of "person authorized by the patient" as "defensible if one only looks at those words in a vacuum," the dissent reasoned that in the statutory scheme a personal injury attorney is not a "person authorized by the patient." *Id.* ¶¶ 41, 79 (Ziegler, J., dissenting). The dissent took issue with the majority's "plain language" analysis and, like the court of appeals, reasoned that all the other "persons" listed in Wis. Stat. § 146.81(5) could "legally act and make decisions when the patient cannot." *Id.* ¶ 52 (Ziegler, J., dissenting). That is, these persons "are authorized by law to act as the patient, not just act because the patient vested them with limited authority to obtain records." *Id.* ¶ 54 (Ziegler, J., dissenting).

The dissent also reasoned that statutory context did not support concluding that personal injury attorneys were "person[s] authorized by the patient." Observing that "[t]he legislature does not enact a fee statute to collect no fees," the dissent argued that the "court's approach virtually guts the possibly of collecting fees and certainly contravenes fairly basic canons of construction." *Id.* ¶ 62 (Ziegler, J., dissenting) (footnote omitted). The majority's interpretation read the retrieval fee and certification charge provisions out of the statute because "nearly anyone who wishes to receive a patient's records needs that patient's authorization and no such

authorized person would ever need to pay the applicable fee, virtually no fees would be paid under this statute." *Id.* ¶ 77 (Ziegler, J., dissenting). Last, Justice Ziegler observed that when the legislature amended the statute in 2014 to exempt public defenders from paying the fees, it signaled the legislature's intent that other attorneys were not exempt from the fees. *Id.* ¶¶ 64-66, 75 (Ziegler, J., dissenting) (citing Wis. Stat. § 146.83(1b)).

The *Moya II* decision spawned a series of class action lawsuits against numerous healthcare providers and their records vendors alleging that the defendants wrongfully charged retrieval and certification fees to third parties with HIPAA written authorizations:

- *Moya v. Healthport Technologies, LLC and Aurora Healthcare, Inc.*, Milwaukee County Circuit Court Case No. 13-CV-2642 (filed March 20, 2013);
- *Dilger, et al. v. IOD, Incorporated, Verisma Systems, Inc. and Ciox Health, LLC*, Waukesha County Circuit Court Case No. 2017-CV-768 (filed May 5, 2017);
- *Meyer v. Ciox Health and Diversified Medical Records Services,* Dane County Circuit Court Case No. 2017-CV-1786 (filed July 24, 2017);
- *Harwood v. Wheaton Franciscan Services, Inc., et al.*, Milwaukee County Case No. 17-CV-12998 (filed November 22, 2017);
- *Rave v. Ciox Health LLC and Columbia St. Mary's Hospital Milwaukee, Inc.*, 2:18-CV-00305 (E.D. Wis. Feb. 28, 2018) (prior to removal, Milwaukee County Circuit Court Case No. 18-CV-607, filed January 22, 2018); and
- *Fotusky v. Ebix, Inc. and Prohealth Care, Inc.*, Milwaukee County Circuit Court Case No. 18-CV-832 (filed January 30, 2018).

One of these cases, *Dilger*, includes Verisma – one of Froedtert's vendors and a defendant in this case – as a defendant. (Dkt. 1 ¶ 5.) Another vendor referenced in Plaintiff's proposed "Froedtert Class," Ciox Health, LLC, is a party to the *Rave* litigation pending before this Court. (*See id.* ¶ 26.)

## B.   Plaintiff's Factual Allegations

The case-specific facts relevant to this motion to dismiss are relatively straightforward.[3] Plaintiff alleges that she "was involved in a car accident and was injured on January 28, 2014."

---

[3] Froedtert presents Plaintiff's allegations as true for purposes of this motion to dismiss only, and reserves all rights to challenge Plaintiff's factual allegations should the case proceed.

(Dkt. 1 ¶ 27.) Plaintiff retained Welcenbach to "process[]" her personal injury claim." (*Id.* ¶ 28.) Plaintiff signed "HIPAA releases authorizing the release of medical information to her attorneys." (*Id.* ¶ 29.)

Plaintiff alleges that Welcenbach "wrote and requested [Plaintiff's] certified medical records from Froedtert and provided a written consent in the form of a HIPAA release signed by [Plaintiff]" on May 12, 2017. (*Id.* ¶ 31.) This was eight days after the filing of the opinion in *Moya II*, which Welcenbach litigated on behalf of the plaintiff Moya. Verisma "responded to the medical records request on behalf of Froedtert" and "charged on invoice number XXXX-XX3501 the sum of $65.83," which contained an $8.26 certification fee. (*Id.* ¶ 32.) Apparently without protest or objection, Welcenbach paid the invoice, including the certification fee, by check, on Plaintiff's behalf. (*Id.* ¶ 33.) After Plaintiff settled her personal injury case, she "reimbursed Welcenbach Law Offices for all charges incurred from Defendants." (*Id.* ¶ 37.) Noticeably, the Complaint does not allege that Plaintiff had any contractual or other legal obligation to reimburse Welcenbach for those charges.

Plaintiff filed this class action lawsuit on March 23, 2018. (Dkt 1.) In Count One, Plaintiff asserts that Froedtert and Verisma willfully or negligently violated Wis. Stat. § 146.83 by charging unauthorized fees. (*Id.* ¶¶ 36-56.) In Count Two, Plaintiff asserts an unjust enrichment claim against Froedtert and Verisma based on this same conduct. (*Id.* ¶¶ 57-60.)

Plaintiff also seeks to represent two proposed classes:

**Froedtert Class**:
All persons in Wisconsin:
(i) who were patients of FROEDTERT who authorized another person in writing to obtain the patient's medical records; and
(ii) were charged a basic, retrieval and/or a certification fee and/or other unauthorized fee by Defendant FROEDTERT or through its agent Verisma, Inc., in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) from July 1, 2011 through the date of trial; or

(iii) were charged a basic, retrieval and/or a certification fee by Defendant FROEDTERT directly or indirectly through an agent **other than** Verisma, Inc. or Ciox Health, LLC in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) since July 1, 2011 through the date of trial.

**Verisma Class:**
All persons in Wisconsin who:
(i) were patients at a medical provider other than FROEDTERT who authorized another person in writing to obtain the patient's medical records; and
(iii) [sic] were charged a basic, retrieval and/or a certification fee and/or other unauthorized fee by Verisma, Inc. in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) since July 1, 2011 through the date of trial.

(Dkt. 1 ¶ 26 (emphasis in original).) Plaintiff's proposed class specifically excludes certain persons or entities, including "any law firm in these proceedings," "any person who is part of another class and has recovered from that class," and anyone who was charged a fee by Defendants but did not pay the fee. (*Id.*)

Plaintiff asks this Court to "[c]ertify the Proposed Classes, appoint the Plaintiff as Class Representative and appoint her counsel as Class Counsel." (*Id.* p. 12.) Plaintiff seeks compensatory and exemplary damages, return of and interest on all sums "illegally collected," and "other proper relief." (*Id.*)

## III.    ARGUMENT

### A.    <u>The Complaint should be dismissed under Rule 12(b)(1) for lack of standing.</u>

#### 1.    Legal Standard.

A complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if a court finds as a facial or factual matter that the plaintiff lacks standing to pursue his or her claims. *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *Groshek v. Time Warner Cable, Inc.,* 865 F.3d 884, 886-87 (7th Cir. 2017) (affirming dismissal of the complaint due to plaintiff failing to allege facts which establish Article III standing).

The "irreducible constitutional minimum" of standing requires the Plaintiff to plead that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130 (1992)). Consequently, "[t]o demonstrate standing[,] a plaintiff must identify an *injury caused by the complained-of conduct* and redressable by a judicial decision." *Cornucopia Inst. v. U.S. Dep't of Agriculture*, 884 F.3d 795, 796 (7th Cir. 2018) (emphasis and bracketed punctuation added).

Injury-in-fact, the "'[f]irst and foremost' of standing's three elements," *Spokeo*, 136 S.Ct. at 1547 (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103, 118 S.Ct 1003 (1998)), requires "a plaintiff [to] show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560); *see also Spokeo*, 136 S.Ct. at 1548 ("We have made it clear time and time again that an injury in fact must be both concrete *and* particularized.") (emphasis in original). Under *Spokeo*, a "particularized" harm means one that "affects the plaintiff in a personal and individual way." *Id.* (citing *Lujan*, 504 U.S. at 560, n.1)*; Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc*., 454 U.S. 464, 472 (1982) ("Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury…."). But not every "particular" harm is "concrete" – instead, only those that are "real, and not abstract" pass constitutional muster. *Spokeo*, 136 S.Ct. at 1548. And although Congress has the power and position to identify injuries, for instance by providing a private right of action to redress certain harms, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. at 1549.

Injury-in-fact and the other "irreducible constitutional" requirements are "not mere pleadings requirements but rather [are] an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. Accordingly, "as the party invoking federal jurisdiction, [the Plaintiff] bears the burden of establishing these elements," and must "clearly…allege facts demonstrating each element." *Spokeo*, 136 S.Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596 (1991) and *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197 (1975)). Plaintiff's Complaint buckles under this burden.

### 2. Plaintiff fails to allege any injury-in-fact that is traceable to Froedtert.

Plaintiff's Complaint fails as a matter of law because she did not adequately plead an injury-in-fact, as required for standing. Rather, the Complaint alleges that *Welcenbach* "wrote and requested certified medical records from Froedtert and provided a written consent in the form of a HIPAA release signed by [Plaintiff]." (Dkt. 1 ¶ 31.) Verisma then "responded to the medical records request on behalf of Froedtert" and charged *Welcenbach* the certification fee. (*Id.* ¶ 32.) Next, *Welcenbach* paid the charges to Verisma by check. (*Id.* ¶ 33.) In short, it was Welcenbach, *not* Plaintiff, who was charged and paid for the allegedly unauthorized fees at issue, and who suffered any alleged injury. Plaintiff's after-the-fact reimbursement does not confer Welcenbach's injury to Plaintiff for standing purposes. The reason is simple: Plaintiff did not allege that she had any obligation to reimburse Welcenbach, and a plaintiff cannot obtain standing merely by volunteering to reimburse another for his or her injury. *See Lujan*, 504 U.S. at 560 ("[T]here must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.").

The Southern District of New York dismissed a strikingly similar class action lawsuit for lack of standing. *Spiro v. Healthport Technologies, LLC*, 73 F. Supp. 3d 259 (S.D.N.Y. 2014). In

*Spiro*, as here, the plaintiffs' lawyers requested their medical records, and the lawyers were charged and paid for allegedly excessive records fees in violation of New York law. *Id.* at 264. Each plaintiff later reimbursed his or her lawyers for those fees upon the settlement of his or her underlying lawsuit, and then filed suit against the defendants for the overpayments, alleging an out-of-pocket loss. *Id.* at 265-66. The Southern District of New York dismissed the plaintiffs' claims for lack of standing, explaining, "the decision by plaintiffs to reimburse [their law firm], after the fact, for the copying costs [their law firm] had paid was a volitional act—an act of grace," that could not establish Article III standing. *Id.* at 268. The court explained that a mere volunteer cannot obtain Article III standing:

> [P]laintiffs' theory that a discretionary decision after-the-fact to reimburse another party for a charge confers standing on the reimbursing entity would vastly broaden Article III standing. Imagine, for example, a person who took a taxi home one night, and was overcharged for a taxi ride in violation of local law. If the person was later voluntarily reimbursed for that cost – by a friend, parent, employer, stranger, or Good Samaritan – that reimbursing entity would then, on plaintiff's theory, have the legal right to sue the cab driver for overcharging. There is no authority for this claim. Absent assignment of a legal right to sue for such relief, which is not alleged here, the mere act of making a third-party whole for an expense incurred and already paid does not entitle the paying party to the right to challenge that expense.

*Id.* at 268-69 (footnote omitted). Accordingly, because the plaintiffs failed to plead any obligation to repay their law firm for the allegedly improper fees, it was *their law firm*, not Plaintiffs, who had standing to challenge the overpayments:

> On these facts, any legal right to challenge defendants' ostensible overcharging would belong exclusively to [the law firm], as it was [the law firm], and [the law firm alone] alone, who suffered an injury caused by defendants' overcharging. Plaintiffs' later decision to reimburse their lawyer, and [their lawyer's] decision to accept such reimbursement, must be taken as independent, volitional, discretionary acts, breaking the chain of causation necessary to establish Article III standing.

*Id.* at 268; s*ee also McCracken v. Verisma Systems, Inc.*, No. 14-CV-6248T, 2015 WL 2374544, *3-5 (W.D.N.Y. May 18, 2015) (dismissing the complaint based on a lack of standing when "the

Amended Complaint does not even contain an allegation that Plaintiffs actually reimbursed their attorneys for the costs of the medical records, much less that they had any legal obligation to reimburse their attorney for their monetary outlay at the time they ordered the copies.").

Similarly, in *State ex rel. Healthport Technologies, LLC v. Stucky*, the West Virginia Supreme Court dismissed a class action complaint related to alleged improper medical record fees for lack of standing when the named plaintiff failed to allege that he either had repaid his attorneys for those allegedly improper fees, or that he had some obligation to do so. 239 W.Va. 239, 800 S.E.2d 506 (2017). The Court concluded that without some allegation that the plaintiff had an obligation to pay the allegedly inflated medical records fees, "he did not show that he suffered an injury in fact, economic or otherwise." *Id.* at 510. Further, it did not matter that the plaintiff's attorneys asserted that they paid the fees as the plaintiff's agent, because "if [plaintiff] does not have an injury in fact, and thereby standing to bring a suit, then his agent would not have standing to bring a suit in his name." *Id.*

In contrast, courts have permitted cases to go forward where the allegations make clear that the plaintiff was ultimately liable for fees paid by someone else, rather than where the plaintiff voluntarily reimbursed costs to a third party. For instance, in *Carter v. HealthPort Technologies, LLC*, the complaint alleged that *each plaintiff* "requested medical records from [defendant] through her counsel" and *each plaintiff* "paid the $77.00 charge through her counsel in order to obtain copies of the requested medical records." 822 F.3d 47, 52, 58 (2d Cir. 2016) ("These are detailed factual allegations that the plaintiffs were the principals, who acted through their agents in requesting and paying for the records.").

Here, in contrast to *Carter,* the alleged overpayments complained of relate to fees charged to third parties requesting a patient's records, not fees charged to the patient requesting

records him or herself. (Dkt. 1 ¶ 26 (defining the class to include patients "who authorized another person in writing to obtain the patient's medical records.").) Consistent with this third-party relationship, Plaintiff alleges that *Welcenbach* requested Plaintiff's medical records, and that *Welcenbach* paid for those records by check. (*Id.* ¶¶ 31, 33.) It was only after Plaintiff settled her personal injury claim that she purportedly reimbursed Welcenbach for those fees. (*Id.* ¶ 37.) Therefore, unlike in *Carter*, this is not a situation where Plaintiff can allege that she has standing because she requested the records or paid the unauthorized fees in the first instance.

Moreover, as in *Spiro, McCracken,* and *Stucky,* Plaintiff failed to plead facts supporting an inference that she was *legally obligated* to repay Welcenbach for the allegedly unauthorized medical record fees, as opposed to doing so as a volunteer, or merely as a means to allow her to bring this suit. For Article III purposes, standing requires "a sufficient causal connection between the injury and the conduct complained of." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 860 (7th Cir. 2018); *Spiro*, 73 F.Supp. 3d at 268-269.[4] Without any allegations or facts supporting an obligation to reimburse Welcenbach or Plaintiff's ultimate liability for paying the allegedly unauthorized fees, Plaintiff cannot satisfy her obligation under Article III to plead an injury-in-fact that is traceable to Froedtert. *Spiro*, 73 F. Supp. 3d at 268-269; *McCracken*, 2015 WL 2374544 at *3-4 (class action plaintiff did not bear her burden to establish Article III standing when she did not "plead the obvious" fact that she had a legal obligation to reimburse her attorney for costs "associated with obtaining copies of [her] medical records"). Plaintiff's "act of grace" to reimburse Welcenbach for the medical record fees breaks the chain of causation. *Spiro*, 73 F. Supp. 3d at 268.

---

[4] Although Article III's "traceability" requirement requires a less-onerous causation standard than proximate cause, s*ee Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S.Ct. 1377, 1391 n.6 (2014), Plaintiff's injury is not "fairly traceable" to Froedtert's conduct because Plaintiff's allegations do not establish that she was legally obligated to reimburse Welcenbach; rather, as noted above, it was her "act of grace" to pay Welcenbach back.

Plaintiff's general allegations that Froedtert "charged" her (and the class members) the unauthorized fees do not save her claim for standing purposes. (Dkt. 1, ¶ 34.) Plaintiff's Complaint specifically alleges that it was Welcenbach who sought the records, Welcenbach who requested the records, and Welcenbach who paid for the records, including the alleged unauthorized fees. (*Id.* ¶¶ 30-31, 33.) In addressing similar general allegations in the *Spiro* complaint, the Court there stated: "The Court cannot treat this conclusory and elliptical statement as equivalent to a concrete factual allegation that the legal duty to pay these bills, or to reimburse [the lawyers] for doing so, fell upon plaintiffs as of the time that [the lawyers] incurred the charge." *Spiro,* 73 F. Supp. 3d at 269 n.6. Similarly here, Plaintiff's general allegation that she was "charged" the allegedly unauthorized fee does not negate the more specific allegations that the request and the payment came from Welcenbach.

Although *Cruz v. All Saints Healthcare Sys., Inc.*, 2001 WI App 67, ¶¶ 13-14, 242 Wis. 2d 432, 625 N.W.2d 344, held that patients whose personal injury attorneys were overcharged for the patients' medical records were the "real parties in interest" to challenge medical record fees, *Cruz* has no bearing on the Plaintiff's standing in this Court for three reasons. First, having standing and being the real party in interest are distinct concepts under Wisconsin law. *Wells Fargo Bank, N.A. v. Alexander*, No. 11-CV-1622, 2013 WL 4104472 (Wis. Ct. App. Aug.15, 2013) (unpublished, authored opinion); *Three T's Trucking v. Kost*, 2007 WI App 158, ¶ 16, 303 Wis. 2d 681, 736 N.W.2d 239 ("'Standing' is a concept that restricts access to judicial remedy to those who have suffered some injury because of something that someone else has either done or not done.")*; Wausau Tile, Inc. v. Cty. Concrete Corp.*, 226 Wis. 2d 235, 593 N.W.2d 445, 454 (1999) ("A real party in interest is one who has a right to control and receive the fruits of the litigation.") (internal citations and quotation omitted). Second, even if *Cruz* did address standing,

it would still have no bearing on Plaintiff's standing here because, "[u]nlike in federal courts…[,] standing in Wisconsin is not a matter of jurisdiction, but of sound judicial policy." *McConkey v. Van Hollen*, 2010 WI 57, ¶ 15, 326 Wis. 2d 1, 783 N.W.2d 855 (footnote omitted). Last, "standing in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715, 133 S.Ct. 2652 (2013).

As the Supreme Court recently made clear in *Spokeo*, allegations that a defendant violated a statute are not enough to create standing for a plaintiff to advance a claim. 136 S.Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation."). Instead, a plaintiff must plead and prove an injury-in-fact or some real harm that "affect[s] the plaintiff in a personal and individual way." *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). Plaintiff's Complaint fails to meet this standard, both for her individual claim, and for her asserted claims on behalf of the class. Plaintiff fails to allege facts showing that she suffered any harm as a result of the alleged unauthorized fees, as opposed to merely volunteering to reimburse Welcenbach for those fees without an obligation to do so. Moreover, Plaintiff's proposed class definition fails to require that the class members paid for the allegedly unauthorized fees or suffered any real harm at all. Absent specific facts establishing a particularized, concrete, and traceable injury-in-fact to Plaintiff, her claims should be dismissed.

**B.**    **The Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim.**

**1.**    **Legal Standard.**

In the context of Rule 12(b)(6), the Seventh Circuit has summarized the Supreme Court's *Twombly* and *Iqbal* jurisprudence as follows:

> We review a 12(b)(6) dismissal for failure to state a claim *de novo* and construe all well-pleaded facts and draw all inferences in the light most favorable to the nonmoving party. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). In order to survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). And while we draw all reasonable inferences and facts in favor of the nonmovant, we need not accept as true any legal assertions or recital of the elements of a cause of action "supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

*Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014). Under this "plausibility" standard, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level.' That is, the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Alam*, 709 F.3d at 666 (quoting *Twombly*, 550 U.S. at 555, 557).

In deciding a 12(b)(6) motion, courts "are free to consider 'any facts set forth in the [complaint] that undermine the [plaintiff's] claim.'" *ERA Franchise Sys., LLC v. Hoppens Realty, Inc.*, No. 12-CV-594-SLC, 2013 WL 3967869, at *5 (W.D. Wis. July 31, 2013) (quoting *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992)).

### 2. Plaintiff fails to plead that Froedtert is a "health care provider," so Froedtert cannot be liable under the statute.

Plaintiff's statutory claim fails out of the gate because it lacks an allegation necessary to entitle her for relief under Wis. Stat. § 146.84. Plaintiff's claim is premised upon the allegation that Froedtert and Verisma violated § 146.83(3f)(b)4.-5. (Dkt.1 ¶¶ 49, 53.) Based on the allegations in the Complaint, however, such a violation is not plausible, as required by *Twombly*. Section 146.83(3f)(b) provides, in relevant part, that "*a health care provider* may charge no more than the total of all of the following that apply for providing the copies." The statutes, in turn, define the term "health care provider" at § 146.81(1). Although Plaintiff contends that Froedtert and Verisma violated this section by charging Welcenbach a certification charge, she does not allege anywhere in her complaint that Froedtert is a "health care provider," as that term is precisely defined in § 146.81. Plaintiff's Complaint, therefore, fail to state a claim for relief

because it omits the necessary allegation that § 146.83 even applies to Froedtert in the first instance. *Vesely*, 762 F.3d at 664.

### 3. Wis. Stat. § 146.84 is not a strict liability statute, and Plaintiff has failed to allege facts plausibly supporting Froedtert's scienter.

Plaintiff's statutory claims also fail because the Complaint cites to no facts plausibly suggesting that Froedtert knowingly, willfully, or negligently violated Wis. Stat. § 146.83, as required for liability under Wis. Stat. § 146.84(1). The plain language of Wis. Stat. § 146.84 makes clear that the legislature did not create a strict liability cause of action for violations of Wis. Stat. § 146.83, but rather sought to punish only "knowing and willful" or "negligent" violations. *See* Wis. Stat. § 146.84 (b) ("Any person… who violates s….146.83 in a manner that is *knowing and willful* shall be liable to any person injured…."), (bm) ("Any person… who *negligently* violates s….146.83 shall be liable to any person injured….").

The Wisconsin Court of Appeals has held as much, noting Wis. Stat. § 146.84(1) "unambiguously requires *some* mental state on the part of the violator…." and therefore is not a strict liability statute. *Hannigan v. Sundby Pharmacy,* 224 Wis. 2d 910, 593 N.W.2d 52, 56 (Ct. App. 1999) (emphasis in original).[5] Although the legislature has since amended the statute to include § 146.84(bm), a cause of action based on negligence, the legislature did not create a strict liability cause of action. *Compare Pawlowski v. Am. Family Mut. Ins. Co.*, 2009 WI 105, ¶ 17, 322 Wis. 2d 21, 777 N.W.2d 67 (explaining that Wis. Stat. § 174.02, which states that an "owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property," is "a strict liability statute"). Under both the plain language of the statute and the interpreting case law, Plaintiff can only recover for Froedtert's

---

[5] When the court of appeals decided *Hannigan*, Wis. Stat. § 146.84(1) provided only a cause of action based on a health care provider's "knowing and willful" statutory violation.

alleged violations of Wis. Stat. § 146.83 if Plaintiff can prove that Froedtert violated the statute in a manner that was "knowing and willful" or "negligent."

Plaintiff does not allege facts to support a plausible claim against Froedtert under either theory. In *Hannigan*, the Wisconsin Court of Appeals interpreted Wis. Stat. § 146.84(1)(b) to impose liability "only if the violation is 'wilful' [sic] in the sense that the act that caused the violation was intentional and voluntary, rather than inadvertent or coerced." 593 N.W.2d at 60. That is, "[t]he violation must also be 'knowing' in the sense that the custodian was aware of the underlying facts that make the act a violation, even though the custodian's actual knowledge of the statute violated is immaterial." *Id.* at 60-61 (footnote and citation omitted). Similarly, under U.S. Supreme Court precedent,[6] a "knowing and willful" violation of a statute means "recklessness—something more than negligence but less than knowledge of the law's requirements." *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 725-26 (7th Cir. 2008) (citing *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 127 S.Ct. 2201 (2007) (interpreting the Fair Credit Reporting Act)). This means that a defendant "does not act in reckless disregard of [a statute] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the [defendant] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Murray*, 523 F.3d at 725-26 (7th Cir. 2008) (quoting *Safeco Ins.*, 551 U.S. 47).

> a. *Plaintiff's knowing and willful statutory violation claim should be dismissed because Plaintiff has failed to allege facts sufficient to support her claim.*

---

[6] For assistance in interpreting statutes which impose liability on "knowing and willful" statutory violations, Wisconsin courts find the U.S. Supreme Court's analysis of similar statutory language persuasive. *See State v. Fettig*, 172 Wis. 2d 428, 493 N.W.2d 254, 260 (Ct. App. 1992) (adopting the rationale of *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084 (1985)).

Although Plaintiff alleges that Froedtert knowingly and willfully violated Wis. Stat. § 146.83 (*see, e.g.,* Dkt. 1 ¶ 35), such conclusory allegations carry no weight in determining whether Plaintiff has stated a claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."). Plaintiff does not allege a single fact to plausibly support her conclusory allegation, as *Iqbal* and *Twombly* require. Indeed, it is unclear *how* Plaintiff could meet her burden to allege facts even suggesting a willful violation of the statute in light of the Court of Appeals' decision in *Moya I*.

> b. *Plaintiff's negligent statutory violation claim should be dismissed because Plaintiff has failed to allege facts sufficient to support her claim.*

Alternatively, Plaintiff alleges that Froedtert *negligently* violated Wis. Stat. § 146.84(bm). (*See, e.g.,* Dkt. 1 ¶¶ 35, 53, 54.) Once again, her conclusory allegations fail to state a claim for relief. *Alam,* 709 F.3d at 666; *Brooks*, 578 F.3d at 581. Plaintiff does not plead any facts supporting a plausible conclusion that Froedtert acted negligently, failed to meet some standard of care, or failed to act in good faith. *See* §§ 146.84(1)(a), (1)(bm); *Twombly* 550 U.S. at 555, 557.

This Court should thus dismiss Plaintiff's statutory violation claim because she fails to plead facts supporting her conclusory allegations that Froedtert either knowingly and willfully or negligently violated Wis. Stat. § 146.83.

### 4. Plaintiff's unjust enrichment claim should be dismissed.

> a. *Plaintiff's unjust enrichment claim should be dismissed because Plaintiff has failed to allege facts sufficient to support her claim.*

To state a claim for unjust enrichment, Plaintiff must "allege facts that, if true, would be sufficient to satisfy a court" that the following elements are present: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and

(3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 2017 WI 110, ¶ 30, 379 Wis. 2d 1, 904 N.W. 2d 789 (*cert. filed* May 22, 2018, No. 17-1574); *Major Mat Co. v. Monsanto Co.*, 969 F.2d 579, 585 (7th Cir. 1992) (applying Wisconsin law). Plaintiff's claims fail to satisfy any of these elements.

First, Plaintiff does not allege that she directly conferred any benefit on Froedtert. Instead, the Complaint alleges that Welcenbach (not Plaintiff) paid the allegedly unauthorized fee to Verisma (not Froedtert). (Dkt. 1 ¶¶ 31-33.) Nowhere does Plaintiff allege that she paid Froedtert any money. Without any allegations supporting a plausible inference that Froedtert received some benefit from Plaintiff, her unjust enrichment claim fails as a matter of law.

Furthermore, Plaintiff does not allege facts supporting the conclusory allegation that Froedtert appreciated or had knowledge of any benefit. Plaintiff alleges only that "Froedtert *knew* the money charged to the Plaintiff and the Class Members were unlawful [sic]," and that "Froedtert appreciated and received the benefit of the money they charged illegally." (Dkt. 1 ¶¶ 58-59 (emphasis added).) Fatally, she provides no facts supporting Froedtert's purported knowledge or appreciation of the benefit. Plaintiff thus cannot support the appreciation element of her unjust enrichment claim, so the claim should be dismissed. *Alam,* 709 F.3d at 666; *Brooks*, 578 F.3d at 581 (conclusory allegations need not be accepted as true by this Court on a motion to dismiss).

Most critically, Plaintiff does not allege any facts supporting the allegation that Froedtert engaged in inequitable conduct. "[U]njust enrichment is a legal cause of action founded on the moral principal that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Stadler v. John Hancock Life Ins. Co.,* No. 13-CV-679-JPS, 2013 WL 5798555, at *7 (E.D. Wis. Oct. 28, 2013) (internal quotation marks and

citation omitted). Thus, an unjust enrichment claim must be dismissed when it lacks allegations of inequitable conduct. *See Puttkammer v. Minth*, 83 Wis. 2d 686, 266 N.W.2d 361, 364, 366 (1978) (holding inequitable conduct is a "critical factor" of an unjust enrichment claim and affirming dismissal of complaint for failure to plead inequitable conduct). Plaintiff's conclusory allegation that "Froedtert's retention of said benefit is inequitable and unjust" is insufficient to plead a cause of action for unjust enrichment under *Iqbal* and *Twombly*. *See Blitz v. Monsanto Co.,* No. 17-CV-473-WMC, 2018 WL 1785499, at *9 (W.D. Wis. Apr. 13, 2018) (dismissing plaintiff's unjust enrichment claim as insufficient under *Iqbal* and *Twombly* due to being supported only by a bald assertion that "[d]efendant[ has] been unjustly enriched through sales of Roundup Products at the expense of Plaintiffs and the National Class Members").

By failing to allege any facts supporting her conclusory allegations of inequitable conduct, Plaintiff fails to state a claim of unjust enrichment.

> ### b. Plaintiff's unjust enrichment claim is barred by the voluntary payment doctrine.

The voluntary payment doctrine "plac[es] upon a party who wishes to challenge the validity or legality of a bill for payment the obligation either before voluntarily making payment, or at the time of voluntarily making payment." *Butcher v. Ameritech Corp.*, 2007 WI App 5, ¶ 15, 298 Wis. 2d 468, 727 N.W.2d 546 (internal citations and quotations omitted). Thus, a claim to recover payment is barred where (1) the party paid without protest, (2) the party had knowledge of all the facts, and (3) payment was not a result of fraud or duress. *Putnam v. Time Warner Cable of Se. Wisconsin, Ltd. P'ship*, 2002 WI 108, ¶¶ 13, 15, 36, 255 Wis. 447, 649 N.W.2d 626 (applying the voluntary payment doctrine at the motion to dismiss stage because plaintiff's allegations, taken as true, proved that plaintiff willingly paid a "bill without protest as to its correctness or legality," but did not allege facts supporting fraud or duress).

-22-

The allegations in the Complaint demonstrate that all of the voluntary payment doctrine elements are present here. Plaintiff is represented by Welcenbach, the same attorney who litigated the *Moya* case through the Wisconsin Supreme Court. Welcenbach undoubtedly was aware of the Court's May 4, 2017 mandate in *Moya II* on May 12, 2017, the day he allegedly submitted Plaintiff's medical record request. (Dkt. 1 ¶ 31); Wisconsin Supreme Court Internal Operation Procedure, III.I Mandate, available at: https://www.wicourts.gov/sc/IOPSC.pdf, at 22 (last visited May 24, 2018) ("On the day of mandate, the clerk's office telephones the attorneys for the parties, notifying them of the court's decision, releases the opinion to the parties and makes copies of the opinion available for public inspection."). Nevertheless, despite having full knowledge that *Moya II* indicated that he did not have to pay the certification fee Verisma included with its invoice, Welcenbach paid the fee without any alleged objection, fraud, or duress. (See Dkt. 1 ¶ 33.) Plaintiff's claims are therefore barred as a matter of law by the voluntary payment doctrine.[7]

> c.  *Because Plaintiff does not plead her unjust enrichment claim in the alternative, it must be dismissed because it is preempted by her statutory claim.*

The equitable doctrine of unjust enrichment applies only in the absence of a remedy at law. *Plumbers' Woodwork Co. v. Merchant's Credit & Adjustment Bureau*, 199 Wis. 466, 226 N.W. 303, 305 (1929) (quoting *First Nat'l Exch. Bank v. Harvey*, 176 Wis. 64, 185 N.W. 215, 217 (1922)) ("It is a general principle of equity that it will not interfere to afford relief where legal redress is available."). Here, the Wisconsin Legislature did just that—and effectively

---

[7] Plaintiff's likely response that *Moya II* bars Froedtert from asserting the voluntary payment doctrine is without support in the decision. Although *Moya II* held that the voluntary payment doctrine did not absolve Healthport of its statutory violation, the Court did not address the doctrine vis-à-vis unjust enrichment claims, or any other common law causes of action. *See Moya II*, 894 N.W.2d 405, ¶ 34. There is nothing that bars application of a common law defense, such as the voluntary payment doctrine, to a common law remedy, such as unjust enrichment.

preempted Plaintiff's unjust enrichment claim—with Wis. Stat § 146.84. For this reason alone, Plaintiff's unjust enrichment claim fails as a matter of law.

Moreover, Seventh Circuit case law bars a plaintiff from taking an internally inconsistent approach to pleading without explicitly pleading the inconsistent causes of action in the alternative: "A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits...." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008) (*quoting Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 715 (7th Cir. 2006))." Thus, for example, "if a plaintiff alleges that a contract exists, and incorporates such claim by reference into his promissory estoppel claim, a promissory estoppel claim will not lie." *Non Typical Inc.v. Transglobal Logistics Grp. Inc.*, No. 10-C-1058, 2011 WL 1792927, at *7 (E.D. Wis. May 11, 2011) (citing *Bertha v. Remy Int'l, Inc.,* 414 F.Supp. 2d 869, 881 (E.D.Wis. 2006); *Harley Marine Servs., Inc. v. Manitowoc Marine Grp.*, LLC, 759 F. Supp. 2d 1059, 1062 (E.D. Wis. 2010) ("[W]here a plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from pleading in the alternative claims that are legally incompatible with the contract claim."). Here, the existence of Wis. Stat. § 146.84 and Plaintiff's statutory claims preclude Plaintiff's unjust enrichment claim. Plaintiff's unjust enrichment claim "incorporates all preceding paragraphs," including those setting forth her statutory claim. (Dkt. 1 ¶ 57.) Plaintiff, therefore, has impermissibly asserted two mutually exclusive causes of action without pleading them in the alternative. Therefore, Plaintiff's unjust enrichment claim should be dismissed because it is incompatible with her statutory claim.

**C.**     **The alleged class period should be limited due to the statute of limitations.**

Finally, if any of Plaintiff's claims are allowed to proceed, which Froedtert contends they should not, they must be limited by the statute of limitations. Plaintiff filed this lawsuit on

March 23, 2018, asserting claims on behalf of the proposed classes for (1) violations of Wis. Stat. § 146.83 and (2) unjust enrichment. (Dkt. 1.) Plaintiff's proposed class period extends from July 1, 2011 to the date of trial. (*Id.* ¶ 26.) However, under Wisconsin law, the relevant limitations periods are: (1) six years for statutory violations, Wis. Stat. § 893.93; and (2) six years for unjust enrichment and other actions upon contract, *see Boldt v. State*, 101 Wis. 2d 566, 305 N.W.2d 133, 141 (1981) (citing predecessor to Wis. Stat. § 893.43). Plaintiff cannot pursue claims on behalf of herself or others that have, by her own allegations, expired as a matter of law. Accordingly, at a minimum, the Court should dismiss all purported class claims accruing prior to March 23, 2012.

## IV.    CONCLUSION

For the reasons given above, Froedtert respectfully requests that this Court grant its Motion and issue an order dismissing all causes of action against Froedtert.

Dated this 24th day of May, 2018.

By:   *s/ Susan E. Lovern*
      Susan E. Lovern, SBN 1025632
      Kelly J. Noyes, SBN 1064809
      Nicholas D. Castronovo, SBN 1085033
      Christopher E. Avallone, SBN 1095465
      *Attorneys for Defendant Froedtert Health, Inc.*
      **von BRIESEN & ROPER, s.c.**
      411 East Wisconsin Avenue, Suite 1000
      Milwaukee, WI 53202
      Lovern Phone:  (414) 287-1286
      Lovern Fax:  (414) 238-6599
      Emails: slovern@vonbriesen.com
              knoyes@vonbriesen.com
              ncastron@vonbriesen.com
              cavallone@vonbriesen.com

30956063.DOC