UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

SAKHONE HARRIS, Individually and on behalf
of a class of others similarly situated,

        Plaintiff,

   v.                           Case No.: 2:18-cv-00464-PP

VERISMA SYSTEMS, INC. and
FROEDTERT HEALTH, INC.,

        Defendants.

**DEFENDANT FROEDTERT HEALTH, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  SUMMARY OF LEGAL BACKGROUND AND FACTUAL ALLEGATIONS............. 3

    A.   Legal Background .................................................................................. 3

         1.   Wisconsin law regarding the confidentiality and release of patient
              health care records. ................................................................... 3

         2.   The Wisconsin Court of Appeals rules that a patient's attorneys are
              not "person[s] authorized by the patient." .................................. 4

         3.   Fifteen months after the Wisconsin Court of Appeals' decision in
              *Moya I*, the Wisconsin Supreme Court reverses and holds that
              personal injury attorneys *are* "person[s] authorized by the patient." ........ 5

    B.   Plaintiff's Factual Allegations .............................................................. 7

    C.   Procedural History ................................................................................ 8

III. ARGUMENT ................................................................................................... 11

    A.   The Amended Complaint should be dismissed under Rule 12(b)(6) for
         failure to state a claim. ....................................................................... 11

         1.   Legal Standard. ....................................................................... 11

         2.   Plaintiff's statutory claim against Froedtert should be dismissed
              because Plaintiff fails to plead that Froedtert is a "health care
              provider," as that term is defined by the statute........................ 12

         3.   Wis. Stat. § 146.84 is not a strict liability statute, and Plaintiff has
              failed to allege facts plausibly supporting Froedtert's scienter. .............. 14

              a.   Plaintiff has failed to allege facts sufficient to plausibly
                   support an inference that Froedtert committed a "knowing
                   and willful" violation of Wis. Stat. § 146.83. ............................... 14

              b.   Plaintiff has failed to allege facts sufficient to support her
                   negligent statutory violation claim................................. 16

              c.   Alternatively, the class period should be limited because
                   any class claims accruing prior to May 4, 2017 are barred
                   as a matter of law. ....................................................... 17

         4.   Plaintiff's unjust enrichment claim should be dismissed with
              prejudice................................................................................. 20

a. Plaintiff's unjust enrichment claim should be dismissed because Plaintiff has failed to allege facts sufficient to support her claim............................................................................... 20

b. Plaintiff's unjust enrichment claim is barred by the voluntary payment doctrine. ....................................................... 21

c. Because Plaintiff does not plead her unjust enrichment claim in the alternative, it must be dismissed because it is preempted by her statutory claim................................................... 23

B. The alleged class period should be limited due to the statute of limitations. ....... 24

IV. CONCLUSION................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Alam v. Miller Brewing Co.*,
709 F.3d 662 (7th Cir. 2013) ........................................................................... 11, 16

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................................... 11, 13, 16, 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007) ........................................................... passim

*Bertha v. Remy Int'l, Inc.*,
414 F.Supp. 2d 869 (E.D.Wis.2006) .................................................................. 23

*Blitz v. Monsanto Co.*,
No. 17-CV-473-WMC, 2018 WL 1785499 (W.D. Wis. Apr. 13, 2018) ................... 21

*Boldt v. State*,
101 Wis. 2d 566, 305 N.W.2d 133 (1981) ........................................................... 24

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ....................................................................... 15, 16

*Butcher v. Ameritech Corp.*,
2007 WI App 5, 298 Wis. 2d 468, 727 N.W.2d 546 ............................................. 21

*Emirat AG v. High Point Printing LLC*,
248 F.Supp. 3d 911 (E.D. Wis. 2017) ............................................................... 20

*ERA Franchise Sys., LLC v. Hoppens Realty, Inc.*,
*No. 12-CV-594-SLC*, 2013 WL 3967869 (W.D. Wis. July 31, 2013) ..................... 12

*First Nat'l Exch. Bank v. Harvey*,
176 Wis. 64, 185 N.W. 215 (1922) .................................................................. 23

*Hamilton v. O'Leary*,
976 F.2d 341 (7th Cir. 1992) ......................................................................... 12

*Harley Marine Servs., Inc. v. Manitowoc Marine Grp.*, LLC,
759 F. Supp. 2d 1059 (E.D. Wis. 2010) ............................................................. 23

*Hart v. Bennet*,
2003 WI App 231, 267 Wis. 2d 919, 672 N.W.2d 306 .......................................... 13

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) .................................................................................. 12

*In re MobileMedia Sec. Litig.*,
  28 F. Supp. 2d 901 (D.N.J. 1998) ........................................................ 12

*In re Trump*,
  7 F.3d 357, 368 (3d Cir. 1993) ............................................................ 12

*Kolupa v. Roselle Park Dist.*,
  438 F.3d 713 (7th Cir.2006) ............................................................... 23

*Liparota v. United States*,
  471 U.S. 419, 105 S.Ct. 2084 (1985) .................................................. 15

*Major Mat Co. v. Monsanto Co.*,
  969 F.2d 579 (7th Cir. 1992) .............................................................. 20

*Moya v. Aurora Healthcare, Inc. [Moya II]*,
  2017 WI 45, 375 Wis. 2d 38, 894 N.W.2d 405 .............................. passim

*Moya v. Aurora Healthcare, Inc. [Moya I]*,
  2016 WI App 5, 366 Wis. 2d 541, 874 N.W.2d 336 ................. 4, 5, 18, 19

*Murray v. New Cingular Wireless Servs., Inc.*,
  523 F.3d 719 (7th Cir. 2008) .............................................................. 15

*Non Typical Inc.v. Transglobal Logistics Grp. Inc.*,
  No. 10-C-1058, 2011 WL 1792927 (E.D. Wis. May 11, 2011) ............. 23

*Pawlowski v. Am. Family Mut. Ins. Co.*,
  2009 WI 105, 322 Wis. 2d 21, 777 N.W.2d 67 .................................. 14

*Paykel v. Rose*,
  265 Wis. 471, 61 N.W.2d 909 (1953) .................................................. 12

*Plumbers' Woodwork Co. v. Merchant's Credit & Adjustment Bureau*,
  199 Wis. 466, 226 N.W. 303 (1929) ................................................... 23

*Putnam v. Time Warner Cable of Se. Wisconsin, Ltd. P'ship*,
  2002 WI 108, 255 Wis. 447, 649 N.W.2d 626 .................................... 22

*Puttkammer v. Minth*,
  83 Wis. 2d 686, 266 N.W.2d 361 (1978) ............................................. 21

*Reynolds v. CB Sports Bar, Inc.*,
  623 F.3d 1143 (7th Cir. 2010) ............................................................ 11

*Safeco Ins. Co. v. Burr*,
  551 U.S. 47, 127 S.Ct. 2201 (2007) .................................................... 15

Case 2:18-cv-00464-LA   Filed 06/14/18   Page 5 of 32   Document 26

*Sands v. Menard*,
   2017 WI 110, 379 Wis. 2d 1, 904 N.W. 2d 789 (*cert. filed* May 22, 2018, No. 17-1574)....... 20

*Stadler v. John Hancock Life Ins. Co.*,
   No. 13-CV-679-JPS, 2013 WL 5798555 (E.D. Wis. Oct. 28, 2013)........................................ 21

*State ex rel. Dicks v. Employee Tr. Funds Bd.*,
   202 Wis. 2d 703, 551 N.W.2d 845 (Ct. App. 1996) .......................................................... 5, 19

*State v. Fettig*,
   172 Wis. 2d 428, 493 N.W.2d 254 (Ct. App. 1992) ............................................................... 15

*State v. Hanson*,
   2012 WI 4, 338 Wis. 2d 243, 808 N.W.2d 390 ...................................................................... 15

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir.2008) ............................................................................................... 23

*Vesely v. Armslist LLC*,
   762 F.3d 661 (7th Cir. 2014) .......................................................................................... 11, 13

## Statutes

Wis. Stat. § 101.01 .................................................................................................................... 12

Wis. Stat. § 146.81 ................................................................................................. 3, 4, 6, 13, 17

Wis. Stat. § 146.82 ...................................................................................................................... 3

Wis. Stat. § 146.83 .......................................................................................................... *passim*

Wis. Stat. § 146.84 .......................................................................................................... *passim*

Wis. Stat. § 174.02 .................................................................................................................... 14

Wis. Stat. § 752.41 ...................................................................................................................... 5

Wis. Stat. § 893.43 .................................................................................................................... 25

Wis. Stat. § 893.93 .................................................................................................................... 25

## Rules

Fed. R. Civ. P. 12(b)(1)........................................................................................................... 9, 10

Fed. R. Civ. P. 12(b)(6)............................................................................................... 9, 11, 12, 16

**Regulations**

45 C.F.R. § 164.524 ............................................................................................ 9, 10

15 U.S.C. § 11 ...................................................................................................... 12

Case 2:18-cv-00464-LA   Filed 06/14/18   Page 7 of 32   Document 26

# I.     INTRODUCTION

Under Wisconsin law, a health care provider must provide copies of a patient's health care records "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees . . . ."  Wis. Stat. § 146.83(3f). In addition to copying charges, the statutes allow health care providers to charge a certification charge and a retrieval fee for the processing of health care records, except when the requester of the records is the "patient or a person authorized by the patient." Wis. Stat. § 146.83(3f)(b)4.-5. Given the context of the statutory scheme and the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5), health care providers and their vendors had, for years, charged certification charges and retrieval fees to personal injury attorneys seeking health care records.

In May 2017, however, the Wisconsin Supreme Court – reversing the Wisconsin Court of Appeals – held that a personal injury attorney authorized by his or her client via a HIPAA written authorization form is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b) who is exempt from the certification charge and retrieval fee.  *Moya v. Aurora Healthcare, Inc.*, 2017 WI 45, 375 Wis. 2d 38, 894 N.W.2d 405 *[Moya II]*. The *Moya II* decision spawned a flurry of litigation, including this lawsuit.

In this case, Plaintiff Sakhone Harris ("Harris") alleges that Froedtert Health, Inc. ("Froedtert") and its vendor, Verisma Systems, Inc. ("Verisma") violated Wis. Stat. § 146.83 by charging her attorneys the certification charge for copies of her medical records, even though her attorneys presented her signed HIPAA release form. (Dkt. 22 ¶¶ 37-38.) Plaintiff further purports to represent a class of individuals who were charged allegedly improper retrieval and/or certification fees. (Dkt. 22 ¶ 31.)

Despite having two opportunities to plead her claims, there are numerous problems with Plaintiff's allegations that doom her claims as a matter of law. *First*, Plaintiff fails to state a

claim under Wis. Stat. § 146.84(1), the statute that provides a private cause of action for violations related to patient health care records. The statute applies to "health care providers," but Plaintiff fails to plead sufficient facts to plausibly suggest that Froedtert is a "health care provider."

*Second*, the plain language of that statute makes clear that a Plaintiff must prove that a defendant violated the statute "knowingly and willfully" or "negligently;" a mere violation of the statute is not enough to create liability. Froedtert raised this issue in response to Plaintiff's original complaint, asserting that she did not plead facts supporting a plausible claim that Froedtert "knowingly and willfully" or "negligently" violated the statute. Nonetheless, Plaintiff failed to allege additional facts in her Amended Complaint to state a plausible claim for relief under Wis. Stat. § 146.84(1). After failing to plead any facts plausibly supporting Froedtert's liability under the statute after two opportunities to do so, Plaintiff's claims should be dismissed with prejudice. Alternatively, should Plaintiff's statutory claims survive this motion to dismiss, any class claims accruing prior to the Wisconsin Supreme Court's decision in *Moya II* on May 4, 2017 fail as a matter of law because Froedtert could not have negligently or intentionally violated Wis. Stat. § 146.83 in light of the Wisconsin Court of Appeals' decision in *Moya I*.

*Third*, Plaintiff's unjust enrichment claim fails as a matter of law because – again after Froedtert raised this issue in its first motion – Plaintiff's Amended Complaint does not allege facts plausibly supporting her claim that Froedtert received a benefit resulting from any alleged inequitable conduct. Moreover, the voluntary payment doctrine bars Plaintiff's unjust enrichment claim because her attorneys paid the charges and did not object to the imposition of the allegedly unauthorized fees before knowingly and willingly paying them. Finally, Plaintiff's unjust enrichment claim should be dismissed as a matter of law because it is an equitable remedy that is

preempted by Wis. Stat. § 146.84.

*Finally*, Plaintiff's class claims are partially-time barred because the alleged class period predates the 6-year statute of limitations for both causes of action. Therefore, should any claims survive this motion, the Court should limit their scope.

## II. SUMMARY OF LEGAL BACKGROUND AND FACTUAL ALLEGATIONS

### A. Legal Background

#### 1. Wisconsin law regarding the confidentiality and release of patient health care records.

Under Wisconsin law, "[a]ll patient health care records shall remain confidential." Wis. Stat. § 146.82(1).[1] Health care providers may only release patient health care records either "with the informed consent of the patient or of a person authorized by the patient," or in limited other circumstances enumerated by statute. *Id.* "Informed consent" is defined by statute to require the patient's written consent for the disclosure of health care records, consistent with the requirements of the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *See* Wis. Stat. § 146.81(2); 45 C.F.R. § 164.524. "[I]f a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees," health care providers are required to provide requested records. Wis. Stat. § 146.83(3f).

Wisconsin law also dictates the maximum fees that health care providers can charge for compiling, preparing, and releasing medical records to persons who have the patient's informed consent.[2] Wis. Stat. § 146.83(3f)(b). The statute lists the maximum charges for paper copies, for

---

[1] All statutory references are to the 2015-2016 statutes, unless otherwise noted.

[2] Froedtert objects to Plaintiff's analogy to third-party copying costs to show that Wisconsin's statutory copying, retrieval, and certification fees are "substantial[]." (Dkt. 22, ¶¶ 14-15.) The cost to copy a document at Staples is wholly inapposite to the cost of maintaining and providing copies of health care records. By statute, health care providers must maintain records confidentially under Wis. Stat. § 146.82, evaluate potential requests, gather records in response to requests, and then produce the records along with a certification of their authenticity. These are resource-intensive tasks that are all reflected in the comprehensive statutory fee schedule determined by the Wisconsin legislature.

microfiche or microfilm copies, and for X-rays, and also provides the following:

> 4.    If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.
>
> 5.    If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

Wis. Stat. § 146.83(3f)(b)4.-5. "[P]erson authorized by the patient," is defined as follows:

> the parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34 (4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient, any person authorized in writing by the patient or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05 (2), except as limited by the power of attorney for health care instrument. If no spouse or domestic partner survives a deceased patient, "person authorized by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895 (1) (d). A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of records, if no guardian has been appointed for the patient.

Wis. Stat. § 146.81(5). The statutes further specify that a "person authorized by the patient" includes public defenders appointed to represent indigent defendants if they have informed consent. Wis. Stat. § 146.83(1b) ("Notwithstanding s. 146.81(5), in this section a 'person authorized by the patient' includes an attorney appointed to represent the patient under [the public defender statute] if that attorney has written informed consent from the patient to view and obtain copies of the records.")

### 2.    The Wisconsin Court of Appeals rules that a patient's attorneys are not "person[s] authorized by the patient."

In early 2013, the Welcenbach Law Offices ("Welcenbach") filed a class action complaint on behalf of Carolyn Moya against Aurora Healthcare, Inc. ("Aurora") and its records vendor, Healthport Technologies, LLC ("Healthport"). *Moya v. Aurora Healthcare, Inc.*, 2016 WI App 5, ¶¶ 3, 7, 366 Wis. 2d 541, 874 N.W.2d 336 [*Moya I*]. The complaint alleged that

Welcenbach requested Moya's medical records from Aurora and Healthport, who then violated Wis. Stat. § 146.83(3f) by charging Welcenbach the $20 retrieval fee and the $8 certification charge even though Moya had authorized Welcenbach in writing to obtain these records. *Id.* ¶¶ 2-3.

Aurora and Healthport moved for summary judgment, arguing that personal injury attorneys with a HIPAA authorization are not "person[s] authorized by the patient" for purposes of the retrieval fee and certification charge. *Id.* ¶ 4. The circuit court sided with Moya, but on an interlocutory appeal the court of appeals reversed. *Id.* ¶¶ 5, 16. The court of appeals explained:

> Our review of the relevant statutes establishes that attorneys are not delineated in the list of individuals set forth in the definition of "person authorized by the patient" in WIS. STAT. § 146.81(5), the context of the statutory scheme indicates that "authorized" means having the power to consent to the release of the patient's records, and the recent amendment to WIS. STAT. § 146.83 adding subsection (1b) [regarding public defenders] clearly shows attorneys do not fall under the definition of "person authorized by the patient." Accordingly, we conclude the circuit court misinterpreted the statute when it determined that Moya's signed HIPAA release made Moya's attorney a "person authorized by the patient" as that term is used in these statutes.

*Id.* ¶ 16. The court of appeals thus held that the defendants properly charged Moya's personal injury attorneys statutory retrieval and certification fees. The decision was published and had statewide precedential effect. Wis. Stat. § 752.41(2); *State ex rel. Dicks v. Employee Tr. Funds Bd.*, 202 Wis. 2d 703, 551 N.W.2d 845, 848 (Ct. App. 1996) ("When the court of appeals construes a statute in a published opinion, that opinion binds every agency and every court until it is reversed or modified.").

### 3. Fifteen months after the Wisconsin Court of Appeals' decision in *Moya I*, the Wisconsin Supreme Court reverses and holds that personal injury attorneys *are* "person[s] authorized by the patient."

*Moya I* remained the law until May 4, 2017, when the Wisconsin Supreme Court reversed the court of appeals' decision. *Moya II*, 894 N.W.2d 405. In *Moya II*, the Wisconsin Supreme

Court gutted the common-sense interpretation adopted by the court of appeals, which the health care industry adhered to in prior years. The court ruled that "an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a 'person authorized by the patient' under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under these subdivisions." *Id.* ¶ 2.

Recognizing numerous problems with the majority's reasoning and agreeing with the court of appeals' decision, the dissent criticized the majority opinion's broad interpretation of "person authorized by the patient" as "defensible if one only looks at those words in a vacuum"; the dissent reasoned that in the statutory scheme a personal injury attorney is not a "person authorized by the patient." *Id.* ¶¶ 41, 79 (Ziegler, J., dissenting). The dissent took issue with the majority's "plain language" analysis and, like the court of appeals, reasoned that all the other "persons" listed in Wis. Stat. § 146.81(5) as being "authorized by the patient" could "legally act and make decisions when the patient cannot." *Id.* ¶ 52 (Ziegler, J., dissenting). That is, these persons "are authorized by law to act as the patient, not just act because the patient vested them with limited authority to obtain records." *Id.* ¶ 54 (Ziegler, J., dissenting).

The dissent also reasoned that statutory context did not support concluding that personal injury attorneys were "person[s] authorized by the patient." Observing that "[t]he legislature does not enact a fee statute to collect no fees," the dissent argued that the "court's approach virtually guts the possibly of collecting fees and certainly contravenes fairly basic canons of construction." *Id.* ¶ 62 (Ziegler, J., dissenting) (footnote omitted). The majority's interpretation read the retrieval fee and certification charge provisions out of the statute because "nearly anyone who wishes to receive a patient's records needs that patient's authorization and no such authorized person would ever need to pay the applicable fee, virtually no fees would be paid

under this statute." *Id*. ¶ 77 (Ziegler, J., dissenting). Last, the dissent observed that when the legislature amended the statute in 2014 to exempt public defenders from paying the fees, it signaled the legislature's intent that other attorneys, such as personal injury attorneys, were *not exempt* from those fees. *Id*. ¶¶ 64-66, 75 (Ziegler, J., dissenting) (citing Wis. Stat. § 146.83(1b)).

The *Moya II* decision spawned a series of class action lawsuits against numerous healthcare providers and their records vendors alleging that the defendants wrongfully charged retrieval and certification fees to third parties with HIPAA written authorizations:

- *Moya v. Healthport Technologies, LLC and Aurora Healthcare, Inc.*, Milwaukee County Circuit Court Case No. 13-CV-2642 (filed March 20, 2013);
- *Dilger, et al. v. IOD, Incorporated, Verisma Systems, Inc. and Ciox Health, LLC*, Waukesha County Circuit Court Case No. 2017-CV-768 (filed May 5, 2017);
- *Meyer v. Ciox Health and Diversified Medical Records Services,* Dane County Circuit Court Case No. 2017-CV-1786 (filed July 24, 2017);
- *Harwood v. Wheaton Franciscan Services, Inc., et al.*, Milwaukee County Case No. 17-CV-12998 (filed November 22, 2017);
- *Rave v. Ciox Health LLC and Columbia St. Mary's Hospital Milwaukee, Inc.,* 2:18-CV-00305 (E.D. Wis. Feb. 28, 2018) (prior to removal, Milwaukee County Circuit Court Case No. 18-CV-607, filed January 22, 2018); and
- *Fotusky v. Ebix, Inc. and Prohealth Care, Inc.*, Milwaukee County Circuit Court Case No. 18-CV-832 (filed January 30, 2018).

One of the state court cases, *Dilger v. IOD, Incorporated*, includes Verisma – Froedtert's alleged vendor and a defendant in this case – as a defendant.[3] (Dkt. 22 ¶ 4.) Another vendor referenced in Plaintiff's proposed "Froedtert Class," Ciox Health, LLC, is a party to the *Rave* litigation pending before this Court. (*See id.* ¶ 31.)

**B.    Plaintiff's Factual Allegations**

The case-specific facts relevant to this motion to dismiss are relatively straightforward.[4]

Plaintiff alleges that she "was involved in a car accident and was injured on January 28, 2014."

---

[3] It is unclear how portions of Plaintiff's claim and the proposed class members' claims are not already encompassed by the claims pending against Verisma and other records vendors in the *Dilger* case.

[4] Froedtert presents Plaintiff's allegations as true for purposes of this motion to dismiss only, and reserves all rights to challenge Plaintiff's factual allegations should the case proceed.

(Dkt. 22 ¶¶ 2, 32.) Plaintiff retained Welcenbach to "process[]" her personal injury claim." (*Id.* ¶ 33.) Plaintiff signed "HIPAA releases authorizing the release of medical information to her attorneys." (*Id.* ¶ 34.)

Plaintiff alleges that Welcenbach "wrote and requested [Plaintiff's] certified medical records from Froedtert and provided a written consent in the form of a HIPAA release signed by [Plaintiff]" on May 12, 2017. (*Id.* ¶ 31.) Plaintiff claims that her "attorneys did not have any independent reason to obtain her medical records other than on her behalf as part of their representation of her," even though Welcenbach submitted the request eight days after the filing of the opinion in *Moya II*, which Welcenbach litigated on behalf of the plaintiff Moya, and over three years after Plaintiff's accident. (*Id.* ¶ 36.) Plaintiff alleges that Verisma "responded to the medical records request on behalf of Froedtert" and "charged on invoice number XXXX-XX3501 the sum of $65.83," which contained an $8.26 certification charge.[5] (*Id.* ¶ 32.) Apparently without protest or objection, Welcenbach paid the invoice, including the certification fee, by check, on Plaintiff's behalf. (*Id.* ¶ 33.) After Plaintiff settled her personal injury case, she "reimbursed Welcenbach Law Offices for all charges incurred from Defendants." (*Id.* ¶ 37.)

## C.   **Procedural History**

Plaintiff filed this class action lawsuit on March 23, 2018. (Dkt 1.) In Count One, Plaintiff asserted that Froedtert and Verisma willfully or negligently violated Wis. Stat. § 146.83 by charging unauthorized fees. (*Id.* ¶¶ 36-56.) In Count Two, Plaintiff asserted an unjust enrichment claim against Froedtert and Verisma based on this same conduct. (*Id.* ¶¶ 57-60.)

---

[5] Notably, Plaintiff does not allege that she was charged or paid a "basic" or retrieval fee; nonetheless, Plaintiff purports to represent class members who were charged those fees. (Dkt. 22 ¶ 31.) Froedtert does not concede that Plaintiff can adequately represent class members who were charged anything other than the certification fee, that her claims are typical of those of the purported class members, or that class certification is otherwise appropriate in this case.

Plaintiff also sought to represent two proposed classes:

**Froedtert Class**:
All persons in Wisconsin:
(i) who were patients of FROEDTERT who authorized another person in writing to obtain the patient's medical records; and
(ii) were charged a basic, retrieval and/or a certification fee and/or other unauthorized fee by Defendant FROEDTERT or through its agent Verisma, Inc., in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) from July 1, 2011 through the date of trial; or
(iii) were charged a basic, retrieval and/or a certification fee by Defendant FROEDTERT directly or indirectly through an agent ***other than*** Verisma, Inc. or Ciox Health, LLC in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) since July 1, 2011 through the date of trial.

**Verisma Class**:
All persons in Wisconsin who:
(i) were patients at a medical provider other than FROEDTERT who authorized another person in writing to obtain the patient's medical records; and
(iii) [sic] were charged a basic, retrieval and/or a certification fee and/or other unauthorized fee by Verisma, Inc. in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) since July 1, 2011 through the date of trial.

(Dkt. 1 ¶ 26 (emphasis in original).) Plaintiff's proposed class specifically excluded certain persons or entities, including "any law firm in these proceedings," "any person who is part of another class and has recovered from that class," and anyone who was charged a fee by Defendants but did not pay the fee. (*Id.*) Plaintiff asked this Court to "[c]ertify the Proposed Classes, appoint the Plaintiff as Class Representative and appoint her counsel as Class Counsel." (*Id.* p. 12.) Plaintiff also sought compensatory and exemplary damages, return of and interest on all sums "illegally collected," and "other proper relief." (*Id.*)

On May 24, 2018, Froedtert filed a motion to dismiss Plaintiff's class action complaint under Rules 12(b)(1) and 12(b)(6). (Dkt. 18.) In its motion, Froedtert asserted that Plaintiff did not allege facts sufficient to demonstrate standing because Plaintiff did not allege that she suffered an injury-in-fact traceable to Froedtert. (Dkt. 18 at 9-16.) Rather, Plaintiff alleged that Welcenbach requested her medical records and paid the accompanying fees to Verisma, which

Plaintiff allegedly later reimbursed. (Dkt. 1 ¶¶ 31, 33, 37.) However, absent some allegation showing that Plaintiff had an obligation to repay Welcenbach, as opposed to merely doing so in order to bring this claim, Plaintiff was a mere volunteer who did not have an injury sufficient to create Constitutional standing. (Dkt. 18 at 14.)

Froedtert also moved to dismiss all of Plaintiff's claims under Rule 12(b)(6) for failure to state a claim. (Dkt. 18 at 16-25). Froedtert argued that Plaintiff failed to plead facts supporting her claim under Wis. Stat. § 146.83 because she did not allege that Froedtert was a "health care provider" who had a duty under that statute. Froedtert further argued that Plaintiff failed to allege facts establishing that Froedtert negligently or knowingly and willingly violated Wis. Stat. § 146.83, as required to state a claim for relief under Wis. Stat. § 146.84. Froedtert also argued that Plaintiff's unjust enrichment claim failed to state a claim and was barred as a matter of law.

Rather than contesting Froedtert's motion to dismiss, Plaintiff amended her complaint. (Dkt. 22.) Apparently conceding Froedtert's 12(b)(1) arguments on standing, Plaintiff now alleges, "The Plaintiff and the proposed class members were obligated to reimburse anyone obtaining their medical records for all fees paid for obtaining the medical records." (*Id.* ¶ 22.) However, while Plaintiff alleges that she did, in fact, reimburse Welcenbach, she does not make any similar allegation regarding actual reimbursement with regard to the proposed class members.[6]

Moreover, Plaintiff's Amended Complaint does not rectify the other pleading deficiencies identified by Froedtert in its original Motion to Dismiss. For example, Plaintiff's new conclusory allegation that Froedtert Health, Inc. is a "health care provider" does not identify

---

[6] Although Plaintiff's Amended Complaint pleads facts sufficient to support her individual standing at this stage of the litigation, Froedtert does not waive its ability to challenge her standing after discovery. Moreover, Froedtert will address the proposed class members' lack of standing if this case reaches a motion to certify the class or similar motion.

the statutory provision under which this plausibly could be true, and it cannot, because no such provision exists.

Plaintiff's Amended Complaint also fails to allege additional facts sufficient to support a plausible inference that Froedtert acted negligently, knowingly and willfully, or inequitably, as required to state a claim for either a statutory violation or unjust enrichment. As discussed below, the few allegations added by Plaintiff do not overcome the deficiencies identified in Froedtert's original Motion to Dismiss, and instead verify that even after two opportunities, Plaintiff cannot allege sufficient facts to plausibly support her claim.

## III.     ARGUMENT

### A.     The Amended Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim.

#### 1.     Legal Standard.

In the context of Rule 12(b)(6), the Seventh Circuit has summarized the Supreme Court's

*Twombly* and *Iqbal* jurisprudence as follows:

> We review a 12(b)(6) dismissal for failure to state a claim *de novo* and construe all well-pleaded facts and draw all inferences in the light most favorable to the nonmoving party. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). In order to survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). And while we draw all reasonable inferences and facts in favor of the nonmovant, we need not accept as true any legal assertions or recital of the elements of a cause of action "supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

*Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014). Under this "plausibility" standard, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level.' That is, the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Alam*, 709 F.3d at 666 (quoting *Twombly*, 550 U.S. at 555, 557).

In deciding a 12(b)(6) motion, courts "are free to consider 'any facts set forth in the [complaint] that undermine the [plaintiff's] claim.'" *ERA Franchise Sys., LLC v. Hoppens Realty, Inc.*, No. 12-CV-594-SLC, 2013 WL 3967869, at *5 (W.D. Wis. July 31, 2013) (quoting *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992)).

## 2. Plaintiff's statutory claim against Froedtert should be dismissed because Plaintiff fails to plead that Froedtert is a "health care provider," as that term is defined by the statute.

Plaintiff's statutory claim fails out of the gate because it lacks an allegation necessary to entitle her for relief under Wis. Stat. § 146.84(1). Plaintiff's claim is premised upon the allegation that Froedtert and Verisma violated § 146.83(3f)(b)4.-5.. (Dkt. 22 ¶¶ 47.) Based on the allegations in the Amended Complaint, however, such a violation is not plausible, as required by *Twombly*.

Section 146.83(3f)(b) provides, in relevant part, that "*a health care provider* may charge no more than the total of all of the following that apply for providing the copies." (Emphasis added). In order to qualify for relief for violation of this statute, Plaintiff must plead that Froedtert is a "health care provider" as that term is defined by the statute. *See, e.g.*, *Paykel v. Rose*, 265 Wis. 471, 473, 61 N.W.2d 909, 910 (1953) ("To entitle plaintiffs to recover for violation of the safe-place statute plaintiffs must plead and establish that the place at which Mrs. Paykel was injured was a 'place of employment' *as that term is defined* in section 101.01(1) Stats….")(emphasis added); *In re MobileMedia Sec. Litig.,* 28 F. Supp. 2d 901, 923 (D.N.J. 1998) (noting that, to state a claim under Section 11 of the federal Securities Act, the plaintiff must allege that the defendant falls *within "the statutorily enumerated categories"* of persons subject to liability under Section 11) (citing 15 U.S.C. § 11(a), *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983), and *In re Trump*, 7 F.3d 357, 365 n. 2, 368 n. 10 (3d Cir. 1993))(emphasis added).

Section 146.81(1) comprehensively defines the term "health care provider." The definition "includes a number of health care professionals licensed or certified by statute. [Wis. Stat. §] 146.81(1)(a)-(hp). It also includes a partnership of any of those providers, § 146.81(1)(i); a 'corporation or limited liability company of any providers specified under pars. (a) to (hp) that provides health care services,' § 146.81(1)(j); and a number of entities or facilities that are licensed or regulated by statute. [§] 146.81(k)-(p)." *Hart v. Bennet*, 2003 WI App 231, ¶ 13, 267 Wis. 2d 919, 672 N.W.2d 306.

Without reference to the statutory subsections, Plaintiff's Amended Complaint contends that Froedtert is a "health care provider" because it is a "network" that includes hospitals, physicians, health centers, and clinics. (Dkt. 22 ¶ 3.) This is a legal conclusion – not an allegation of fact – and it therefore bears no weight on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Even if it did, Plaintiff's legal conclusion is demonstrably wrong. The term "network" is conspicuously absent from the list of "health care providers" in § 146.81(1), and Plaintiff provides no explanation of how the "network" described qualifies as a "health care provider."

Although Plaintiff contends that Froedtert violated Wis. Stat. § 146.83 by charging Welcenbach a certification charge, she does not allege facts sufficient to plausibly support the conclusion that Froedtert is a "health care provider," as that term is defined in § 146.81. Plaintiff's Amended Complaint, therefore, omits the necessary allegation that § 146.83 even applies to Froedtert in the first instance, and it should be dismissed as a matter of law. *Vesely*, 762 F.3d at 664.

### 3. Wis. Stat. § 146.84 is not a strict liability statute, and Plaintiff has failed to allege facts plausibly supporting Froedtert's scienter.

Plaintiff's statutory claims also fail because the Amended Complaint cites no facts plausibly suggesting that Froedtert knowingly, willfully, or negligently violated Wis. Stat. § 146.83, as required for liability under Wis. Stat. § 146.84(1). The plain language of Wis. Stat. § 146.84(1) makes clear that the legislature did not create a strict liability cause of action for violations of Wis. Stat. § 146.83, but rather sought to deter only "knowing and willful" or "negligent" violations. *See* Wis. Stat. § 146.84(1)(b) ("Any person… who violates s….146.83 in a manner that is *knowing and willful* shall be liable to any person injured…."), (bm) ("Any person… who *negligently* violates s….146.83 shall be liable to any person injured…."); *cf. Pawlowski v. Am. Family Mut. Ins. Co.*, 2009 WI 105, ¶ 17, 322 Wis. 2d 21, 777 N.W.2d 67 (explaining that Wis. Stat. § 174.02, which states that an "owner of a dog *is liable* for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property," is "a strict liability statute") (emphasis added). Accordingly, Plaintiff can only recover for Froedtert's alleged violations of Wis. Stat. § 146.83 if Plaintiff can establish that Froedtert violated the statute in a manner that was: i) "knowing and willful;" or ii) "negligent" and while not acting in good faith. Plaintiff does not allege facts to support a plausible claim against Froedtert under either theory for herself or for the putative class.

> a. Plaintiff has failed to allege facts sufficient to plausibly support an inference that Froedtert committed a "knowing and willful" violation of Wis. Stat. § 146.83.

Although Plaintiff conclusorily alleges that Froedtert knowingly and willfully violated Wis. Stat. § 146.83, the Amended Complaint contains no facts to support such an inference. Both Wisconsin and federal courts interpreting statutes imposing a "willful" requirement have required plaintiffs to prove something more than mere violation of a statute to recover. For

example, in *State v. Hanson*, the Wisconsin Supreme Court interpreted a statute punishing the "willful or wanton disregard" of a signal from a traffic officer as requiring "a subjective understanding by the defendant that a person known by the defendant to be a traffic officer has directed the defendant to take a particular action, and with that understanding, the defendant chose to act in contravention of the officer's direction." 2012 WI 4, ¶ 27, 338 Wis. 2d 243, 808 N.W.2d 390.

Similarly, under U.S. Supreme Court precedent,[7] a "knowing and willful" violation of a statute means "recklessness—something more than negligence but less than knowledge of the law's requirements." *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 725-26 (7th Cir. 2008) (citing *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 127 S.Ct. 2201 (2007) (interpreting the Fair Credit Reporting Act)). This means that a defendant "does not act in reckless disregard of [a statute] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the [defendant] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 725-26 (quoting *Safeco Ins.*, 551 U.S. 47).

The Amended Complaint does not allege any facts plausibly satisfying these requirements. Although Plaintiff alleges that Froedtert knowingly and willfully violated Wis. Stat. § 146.83 (*see, e.g.,* Dkt. 22 ¶ 55), such conclusory allegations carry no weight in determining whether Plaintiff has stated a claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.").

---

[7] For assistance in interpreting statutes which impose liability on "knowing and willful" statutory violations, Wisconsin courts find the U.S. Supreme Court's analysis of similar statutory language persuasive. *See State v. Fettig*, 172 Wis. 2d 428, 493 N.W.2d 254, 260 (Ct. App. 1992) (adopting the rationale of *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084 (1985)).

Plaintiff does not allege facts plausibly supporting either Froedtert's knowledge of a statutory violation or any "willful" violation, as *Iqbal* and *Twombly* require. The closest Plaintiff gets is alleging that the potential for increased revenue from overcharging incentivized Froedtert to break the law. (Dkt. 22 ¶ 7.) However, the obvious conclusion that more fees results in more revenue does not constitute "factual content that allows the court to draw the reasonable inference" that Froedtert both *knew* that the fees were improper, and *willfully* decided to have Verisma charge them anyway. *Ashcroft*, 556 U.S. at 678; *Alam,* 709 F.3d at 666. In other words, despite having an opportunity to amend her Complaint, Plaintiff cannot allege facts "'plausibly suggesting (not merely consistent with)' an entitlement to relief." *Alam*, 709 F.3d at 666 (quoting *Twombly*, 550 U.S. at 555, 557). This Court should thus dismiss Plaintiff's knowing and willful statutory claim for failure to state a claim.

> b. *Plaintiff has failed to allege facts sufficient to support her negligent statutory violation claim.*

Alternatively, Plaintiff alleges that Froedtert *negligently* violated Wis. Stat. § 146.83, as required to state a claim for relief under Wis. Stat. § 146.84(bm). (*See, e.g.,* Dkt. 22 ¶ 59.) Once again, her conclusory allegations fail to state a claim for relief. *Alam,* 709 F.3d at 666; *Brooks*, 578 F.3d at 581.

Here, Plaintiff merely pleads an alleged violation of Wis. Stat. § 146.83 by Verisma charging a certification fee, but does not plead any facts plausibly supporting the conclusion that Froedtert somehow acted negligently, as required to show a violation of the statute, let alone that Froedtert was not acting in good faith. *See* §§ 146.84(1)(a), (bm)("A custodian of records incurs no liability under par. (bm) for the release of records in accordance with s. 146.82 or 146.83 while acting in good faith."); *Twombly* 550 U.S. at 555, 557 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do") (alteration in original). Without any facts supporting that Froedtert failed to exercise the degree of care that a health care provider of ordinary prudence would have exercised in the same circumstances, Plaintiff's claim for relief of a negligent violation of Wis. Stat. § 146.83 fails as a matter of law.

> c.     *Alternatively, the class period should be limited because any class claims accruing prior to May 4, 2017 are barred as a matter of law.*

Finally, should any claims survive Froedtert's motion to dismiss, the class claims should be limited in scope prior to the parties engaging in costly discovery. Plaintiff purports to represent a putative class that includes members who were charged unlawful fees from July 1, 2011 up through the date of trial. This time period is unlawfully broad for two reasons.

First, even were this Court to find that Plaintiff plead sufficient facts to support her claims for a statutory violation (which it should not), any class claims accruing before May 4, 2017 – when the Wisconsin Supreme Court decided *Moya II* – are barred as a matter of law because Plaintiff and the class members cannot allege or prove any facts supporting the necessary scienter requirement for liability prior to the Supreme Court's ruling. A person can only be liable for violating Wis. Stat. § 146.83(3f) if the alleged overcharging was "knowing and willful" or "negligent" while Froedtert was acting not in good faith. *See, supra*, at 14-17.

Likewise, Froedtert can only be liable for unjust enrichment if the alleged overcharging was "inequitable and unjust." *See, infra*, at 20-21. Plaintiff alleges no facts supporting any reasonable inference that Froedtert acted "knowingly and willfully," "negligently," or "inequitably" by charging certification charges or retrieval fees to personal injury attorneys or other persons with HIPAA written authorizations at all, much less on behalf of class members

who sought records before *Moya II*.[8]

The only reasonable inference from the Amended Complaint and Wisconsin law is that health care providers and their vendors acted in good faith by charging the fees at issue to third parties with HIPAA written authorizations prior to the *Moya II* decision. The predecessor regulation to Wis. Stat. § 146.83, as interpreted by the Wisconsin Department of Health and Family Services, explicitly rejected the position that a patient's attorneys were exempt from paying records fees as a personal representative of the patient, to be consistent with federal HIPAA regulations.[9] There is no apparent indication in the legislative history to Wis. Stat. § 146.83 that the legislature intended to deviate from that prior state and federal practice.

To the contrary, and as the court of appeals held on December 1, 2015 in *Moya I*, there were numerous indications in the language of Wis. Stat. §§ 146.81 and 146.83 that "person authorized by the patient" did *not* include an attorney with a HIPAA written authorization for purposes of avoiding the fees at issue. For example, the categories of people included in the definition of "person authorized by the patient" were all authorized to make health care decisions for the patient. *Moya I*, 2016 WI App 5, ¶ 13. Moreover, the legislature explicitly enacted an exception from the records charges for public defenders, which would be entirely redundant if an attorney with a HIPAA release was already exempt from the charges as a "person authorized by the patient." *Id.* ¶ 14 (citing Wis. Stat. § 146.83(1b)). Based on these factors, the court of appeals concluded:

---

[8] By seeking to limit Plaintiff's class claims, Froedtert does not concede that a class is appropriate, nor that either it or Verisma acted with the requisite mental state for liability after the *Moya II* ruling. To the contrary, to the extent any of Plaintiff's claims survive, Froedtert will prove that it acted at all times in good faith, and that Plaintiff cannot prove the elements for liability under Wis. Stat. § 146.84.

[9] *See* DHFS Order 03-111, February 2, 2007, available at https://docs.legis.wisconsin.gov/code/misc/chr/lrb_filed/cr_03_111_final_rule_filed_with_lrb ("To maintain consistency with the federal HIPAA regulations and policy interpretations, the Department believes that HFS 117 needs to clearly specify that the lower 'individual' fee limit *does not apply to an attorney requesting a client's health care records*.") (emphasis added).

Accordingly, 'person authorized by the patient' as used in § 146.83(3f)(b)4. and 5. means the same as it does in § 146.81(5): a person who has been authorized to consent to the release of a patient's health care records in place of the patient. This definition does not include [Welcenbach] because it does not include attorneys who only have a HIPAA release from their client.

*Id.* ¶ 13.

The court of appeals' decision and interpretation of the statute remained the law until the supreme court decided *Moya II* in May 2017. *State ex rel. Dicks v. Employee Tr. Funds Bd.*, 202 Wis. 2d 703, 551 N.W.2d 845, 848 (Ct. App. 1996) ("When the court of appeals construes a statute in a published opinion, that opinion binds every agency and every court until it is reversed or modified."). Yet, Plaintiff's Amended Complaint seeks to certify a class of individuals to receive damages of up to $25,000 per violation for charging fees that the court of appeals held were entirely consistent with Wis. Stat. § 146.83. As a matter of law, Froedtert cannot have acted inequitably, or violated Wis. Stat. § 146.83 in a negligent or knowing and willful manner, prior to there being any indication that charging those fees was a violation of the statute at all. In fact, Plaintiff does not even attempt to allege facts supporting any inference of inequitable conduct, negligence, or a knowing and willful statutory violation, either before *or* after the Supreme Court changed the law in *Moya II*.

In conclusion, all putative class members' claims that depend on the allegation that Froedtert unlawfully charged certification charges or retrieval fees to personal injury attorneys or other persons authorized by the patient prior to *Moya II* fail as a matter of law and should be dismissed with prejudice. All of the pre-*Moya II* claims depend on proof that Froedtert "knowingly and willfully," "negligently," or "inequitably" charged illegal fees, and Plaintiff alleges no facts to support a reasonable inference of the required mental state. Moreover, before *Moya II*, Froedtert simply could not have charged the allegedly illegal fees with the requisite state of mind because its alleged conduct comported with the health care industry's general

understanding of § 146.83(3f), regulatory history, and, for almost a year and a half, a binding court of appeals' decision indicating that those fees were proper.

4. **Plaintiff's unjust enrichment claim should be dismissed with prejudice.**

   a. *Plaintiff's unjust enrichment claim should be dismissed because Plaintiff has failed to allege facts sufficient to support her claim.*

To state a claim for unjust enrichment, Plaintiff must "allege facts that, if true, would be sufficient to satisfy a court" that the following elements are present: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 2017 WI 110, ¶ 30, 379 Wis. 2d 1, 904 N.W. 2d 789 (*cert. filed* May 22, 2018, No. 17-1574); *Major Mat Co. v. Monsanto Co.*, 969 F.2d 579, 585 (7th Cir. 1992) (applying Wisconsin law). Although Plaintiff amended her allegations following Froedtert's first motion to dismiss, Plaintiff did nothing to cure the defects in her unjust enrichment claim, which should now be dismissed without leave to amend.

First, Plaintiff does not allege that she directly conferred any benefit on Froedtert, as required to state a claim for unjust enrichment. *See Emirat AG v. High Point Printing LLC*, 248 F.Supp. 3d 911, 937 (E.D. Wis. 2017) (dismissing unjust enrichment claim that alleged plaintiff paid another entity that in turn paid the defendant because the plaintiff did not directly confer a benefit on the defendant). Instead, the Amended Complaint alleges that Welcenbach (not Plaintiff) paid the allegedly unauthorized fee to Verisma (not Froedtert). (Dkt. 22 ¶¶ 37-39.) Without any allegations supporting a plausible inference that Froedtert *directly* received some benefit from Plaintiff, her unjust enrichment claim fails as a matter of law.

More critically, Plaintiff does not allege enough facts to plausibly support the allegation that Froedtert engaged in inequitable conduct. "[U]njust enrichment is a legal cause of action

founded on the moral principal that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Stadler v. John Hancock Life Ins. Co.,* No. 13-CV-679-JPS, 2013 WL 5798555, at *7 (E.D. Wis. Oct. 28, 2013) (internal quotation marks and citation omitted). Thus, an unjust enrichment claim must be dismissed when it lacks allegations of inequitable conduct. *See Puttkammer v. Minth,* 83 Wis. 2d 686, 266 N.W.2d 361, 364, 366 (1978) (holding inequitable conduct is a "critical factor" of an unjust enrichment claim and affirming dismissal of complaint for failure to plead inequitable conduct). Plaintiff's conclusory allegations that Froedtert had an incentive to overcharge (Dkt. 22 ¶ 7), and that "Froedtert's retention of said benefit is inequitable and unjust" (*id.* ¶ 66), are insufficient to plead a cause of action for unjust enrichment under *Iqbal* and *Twombly. See Blitz v. Monsanto Co.,* No. 17-CV-473-WMC, 2018 WL 1785499, at *9 (W.D. Wis. Apr. 13, 2018) (dismissing plaintiff's unjust enrichment claim as insufficient under *Iqbal* and *Twombly* due to being supported only by a bald assertion that "[d]efendant [has] been unjustly enriched through sales of Roundup Products at the expense of Plaintiffs and the National Class Members"). By failing to allege any facts supporting her conclusory allegations of inequitable conduct in her Amended Complaint, even after Froedtert raised this issue in its first motion to dismiss, Plaintiff fails to state a claim of unjust enrichment.

             b.    *Plaintiff's unjust enrichment claim is barred by the voluntary payment doctrine.*

      The voluntary payment doctrine "plac[es] upon a party who wishes to challenge the validity or legality of a bill for payment the obligation either before voluntarily making payment, or at the time of voluntarily making payment." *Butcher v. Ameritech Corp.*, 2007 WI App 5, ¶ 15, 298 Wis. 2d 468, 727 N.W.2d 546 (internal citations and quotations omitted). Thus, a claim to recover payment is barred where (1) the party paid without protest, (2) the party had

knowledge of all the facts, and (3) payment was not a result of fraud or duress. *Putnam v. Time Warner Cable of Se. Wisconsin, Ltd. P'ship*, 2002 WI 108, ¶¶ 13, 15, 36, 255 Wis. 447, 649 N.W.2d 626 (applying the voluntary payment doctrine at the motion to dismiss stage because plaintiff's allegations, taken as true, proved that plaintiff willingly paid a "bill without protest as to its correctness or legality," but did not allege facts supporting fraud or duress).

The allegations in the Amended Complaint confirm that all of the voluntary payment doctrine elements are present here. Plaintiff is represented by Welcenbach, the same attorney who litigated the *Moya* case through the Wisconsin Supreme Court. Welcenbach undoubtedly was aware of the Court's May 4, 2017 mandate in *Moya II* on May 12, 2017, the day he allegedly submitted Plaintiff's medical record request. (Dkt. 22 ¶ 37; Wisconsin Supreme Court Internal Operation Procedure, III.I Mandate, available at: https://www.wicourts.gov/sc/IOPSC.pdf, at 22 (last visited June 8, 2018) ("On the day of mandate, the clerk's office telephones the attorneys for the parties, notifying them of the court's decision, releases the opinion to the parties and makes copies of the opinion available for public inspection.").) Nevertheless, despite having knowledge that *Moya II* indicated that he did not have to pay the certification fee Verisma included with its invoice, Welcenbach paid the fee without any alleged objection, fraud, or duress. (See Dkt. 22 ¶ 39.) Plaintiff's claims are therefore barred as a matter of law by the voluntary payment doctrine.[10]

---

[10] Plaintiff's likely response that *Moya II* bars Froedtert from asserting the voluntary payment doctrine is without support in the decision. Although *Moya II* held that the voluntary payment doctrine did not absolve Healthport of its statutory violation, the Court did not address the doctrine vis-à-vis unjust enrichment claims, or any other common law causes of action. *See Moya II*, 894 N.W.2d 405, ¶ 34. There is nothing in *Moya II* that bars application of a common law defense, such as the voluntary payment doctrine, to a common law remedy, such as unjust enrichment.

      c.      *Because Plaintiff does not plead her unjust enrichment claim in the alternative, it must be dismissed because it is preempted by her statutory claim.*

The equitable doctrine of unjust enrichment applies only in the absence of a remedy at law. *Plumbers' Woodwork Co. v. Merchant's Credit & Adjustment Bureau*, 199 Wis. 466, 226 N.W. 303, 305 (1929) (quoting *First Nat'l Exch. Bank v. Harvey*, 176 Wis. 64, 185 N.W. 215, 217 (1922)) ("It is a general principle of equity that it will not interfere to afford relief where legal redress is available."). Here, the Wisconsin Legislature enacted in Wis. Stat § 146.84 a private cause of action for violation of Wis. Stat. § 146.83. For this reason alone, Plaintiff's unjust enrichment claim effectively is preempted and fails as a matter of law.

Moreover, Seventh Circuit case law bars a plaintiff from taking an internally inconsistent approach to pleading without explicitly pleading the inconsistent causes of action in the alternative: "A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits...." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008) (*quoting Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 715 (7th Cir. 2006))." Thus, for example, "if a plaintiff alleges that a contract exists, and incorporates such claim by reference into his promissory estoppel claim, a promissory estoppel claim will not lie." *Non Typical Inc.v. Transglobal Logistics Grp. Inc.,* No. 10-C-1058, 2011 WL 1792927, at *7 (E.D. Wis. May 11, 2011) (citing *Bertha v. Remy Int'l, Inc.,* 414 F.Supp. 2d 869, 881 (E.D. Wis. 2006); *Harley Marine Servs., Inc. v. Manitowoc Marine Grp.*, LLC, 759 F. Supp. 2d 1059, 1062 (E.D. Wis. 2010) ("[W]here a plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from pleading in the alternative claims that are legally incompatible with the contract claim.").

Here, the existence of Wis. Stat. § 146.84 and Plaintiff's statutory claims preclude Plaintiff's unjust enrichment claim. Plaintiff's unjust enrichment claim – even in her Amended Complaint – "incorporates all preceding paragraphs," including those setting forth her statutory claim. (Dkt. 22 ¶ 63.) Plaintiff, therefore, has impermissibly asserted two mutually exclusive causes of action without pleading them in the alternative, despite having ample warning from Froedtert's first motion to dismiss that she needed to do so. Therefore, Plaintiff's unjust enrichment claim should be dismissed with prejudice because it is incompatible with her statutory claim.

**B.**    **<u>The alleged class period should be limited due to the statute of limitations</u>.**

Alternatively, if any class claims are allowed to proceed, they must be limited by the statute of limitations. Plaintiff filed this lawsuit on March 23, 2018, asserting claims on behalf of the proposed classes for (1) violations of Wis. Stat. § 146.83 and (2) unjust enrichment. (Dkt. 1.) Plaintiff's proposed class period extends from July 1, 2011 to the date of trial. (Dkt. 22 ¶ 31.) However, under Wisconsin law, the relevant limitations periods are: (1) six years for statutory violations, Wis. Stat. § 893.93; and (2) six years for unjust enrichment and other actions upon contract, *see Boldt v. State*, 101 Wis. 2d 566, 305 N.W.2d 133, 141 (1981) (citing predecessor to Wis. Stat. § 893.43). Plaintiff cannot pursue claims on behalf of herself or others that have, by her own allegations, expired as a matter of law. Accordingly, at a minimum, this Court should dismiss all purported class claims accruing prior to March 23, 2012.

## IV.    CONCLUSION

For the reasons given above, Froedtert respectfully requests that this Court grant its Motion and issue an order dismissing all causes of action against Froedtert with prejudice and without further leave to amend.

Dated this 14th day of June, 2018.

By: _____s/ Susan E. Lovern_____
Susan E. Lovern, SBN 1025632
Kelly J. Noyes, SBN 1064809
Nicholas D. Castronovo, SBN 1085033
Christopher E. Avallone, SBN 1095465
*Attorneys for Defendant Froedtert
Health, Inc.*
**von BRIESEN & ROPER, s.c.**
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Lovern Phone:  (414) 287-1286
Lovern Fax:  (414) 238-6599
Emails: slovern@vonbriesen.com
knoyes@vonbriesen.com
ncastron@vonbriesen.com
cavallone@vonbriesen.com

31182292_5.DOC